Moss *v.* Gardner.

5-1366                                      310 S. W. 2d 491

Opinion delivered March 3, 1958.

*Lasley & Lovett,* for appellant.

*William H. Drew,* for appellee.

Ralph W. Robinson, Special Associate Justice. The question to be determined on this appeal is whether the parties to a sales contract can waive, and by express contract have waived, the implied warranties afforded by the Uniform Sales Act.[1]

On May 9, 1955 appellee, Dr. B. M. Gardner, purchased a new McCormick hay baler from Moss Truck & Tractor Company, a partnership composed of W. E. Moss and W. E. Moss, Jr. Dr. Gardner traded in an old hay baler and paid $359.49 in cash, and for the balance of the purchase price executed a title retaining note to Moss for $1,359.82 as the balance due for the new hay baler. When the note was not paid at maturity and Moss filed action, Dr. Gardner claimed that he had rescinded the entire sale because of breach of implied warranty. He claimed that the hay baler was defective in that it did not tie the bale of hay when baled; that he had repeatedly notified Moss of the defect; that such defect had not been corrected; and that Gardner therefore

---

[1] Arkansas adopted the Uniform Sales Act by Act No. 428 of 1941 (see 68-1404 *et seq.* Ark. Stats.).

had the right to rescind the entire trade because of Section 68-1469 of the Arkansas Statutes, 1947 annotated.[2] Dr. Gardner relied on the implied warranty stated in § 68-1415 of the Arkansas Statutes, 1947 annotated.

Moss claimed, *inter alia,* that all implied warranties had been expressly excluded from the sale because of the contract which Dr. Gardner had signed, and which is more fully detailed herein.

The Chancery Court found in favor of Dr. Gardner and granted him all claimed rights of rescission. As a prerequisite to such relief granted Dr. Gardner, the Chancery Court found:

"There is an implied warranty of fitness in the machine (Haybaler) sold by the plaintiffs and cross defendants, W. E. Moss and W. E. Moss, Jr., partners, doing business as Moss Truck & Tractor Company, and this implied warranty is in full force and effect even though there is an express warranty in the contract of sale limiting the International Harvester Company's liability to furnishing any new parts for those which, in the judgment of company, might have been shown defective."

There were many other issues in the Trial Court which we need not discuss, because our holding on the matter of implied warranty makes it unnecessary for us to consider any of these other matters.

The contract of purchase which Dr. Gardner signed with Moss contained this language:

"The Warranty on the back hereof is in lieu of all other warranties express or implied and all other obligations or liabilities on the part of the Seller. THE PURCHASER ACKNOWLEDGES RECEIPT OF A COPY OF THIS ORDER, WHICH, TOGETHER WITH THE WARRANTY ON THE BACK HEREOF, IS UNDERSTOOD TO BE THE ENTIRE CONTRACT RELAT-

---

[2] Moss also claimed (a) that the hay baler had been repaired so that it would tie the bales of hay properly; and also (b) that Dr. Gardner had waited too long to attempt to exercise a rescission of the Contract.

ING TO THE SALE OF THE EQUIPMENT COV-
ERED BY THIS ORDER.''

On the back of the contract, this is the warranty re-
ferred to in the above language:

''The International Harvester Company warrants
each item of new McCormick Farm Equipment to be
free from defects in material or workmanship under
normal use and service. The obligation of the Company
under this warranty is limited to furnishing new parts
for those parts that prove, in the Company's judgment,
to be defective in material or workmanship within six
(6) months after delivery by the Seller to the original
Purchaser. New parts will be furnished free of charge
to the Purchaser at the Seller's place of business.

''The above warranties are in lieu of all other war-
ranties expressed or implied and all other obligations or
liabilities on the part of the Company, and no person,
agent or dealer is authorized to give any other war-
ranties on the Company's behalf or to assume for it
any other liability.''

Dr. Gardner gave an affirmative answer to inquiry
as to whether he had read the warranty on the contract.

Assuming that the hay baler was entirely defective
and that it violated the implied warranties stated in §
68-1415 Arkansas Statutes, which is § 15 of the Uniform
Sales Act, nevertheless, Moss contends that all of these
implied warranties were expressly excluded from this
transaction because of the above quoted language, and
Moss cites us to § 68-1471 Arkansas Statutes (which is
Section 71 of the Uniform Sales Act) and which reads
in part:

''Where any right, duty or liability would arise un-
der a contract to sell or a sale, by implication of law,
it may be negatived or varied by an express agreement
or by the course of dealing between the parties or by
custom, if the custom be such as to bind both parties to
the contract or the sale.''

The cases are uniform in holding that the said quoted language from § 71 of the Uniform Sales Act allows parties to contract away and exclude from their transaction all implied warranties under the Uniform Sales Act, and all express warranties except those contained in the contract. 117 A. L. R. 1344.

The question for determination then is whether or not a sales contract under the Uniform Sales Act can exclude from the transaction all implied warranties under the Statute, and whether or not under this contract the implied warranties have been waived. The contract that Gardner signed with Moss says:

"The above warranties are in lieu of all other warranties express or implied and all other obligations or liabilities on the part of the Company, and no person, agent or dealer is authorized to give any other warranties on the Company's behalf or to assume for it any other liability."

"Provided, however, on items of new McCormick farm equipment where a special warranty is printed in the owner's manual furnished with such equipment, in every such case such printed warranty shall be controlling and to the exclusion of all other warranties express or implied."

This language is too clear to admit of doubt. It excludes all implied warranties under the statutes and leaves Dr. Gardner only the right to claim under the express warranties stated on the reverse side of the contract, and which we have heretofore copied. There can be no serious claim made that these express warranties were violated. Dr. Gardner has signed a contract specifically waiving all his implied warranties, and the Chancery Court was in error in holding that he had any implied warranties, in the light of the contract he signed.

It is not for us to moralize on the matter; there is ample evidence here that this hay baler was defective; and we seriously doubt if a sales agency or management can ever build customer good will by relying on the

printed form of a contract in the face of testimony of this nature. If manufacturers and sales agencies continue to resort to such fine print on the back of the contract, it may be that a person buying an expensive piece of machinery will have to take his lawyer around with him to tell him the legal implications resulting from the signing of such a contract. The transaction here will not build customer good will and better friendships; but, since the enactment of the Uniform Sales Law and according to the strict letter of that law, Dr. Gardner by executing this contract waived all of his implied warranties, and so the decree of the Chancery Court must be reversed and the cause remanded, with directions for the Chancery Court to enter judgment for the amount sued for.

HARRIS, Chief Justice, not participating; WARD, J., dissents.

PAUL WARD, Associate Justice, dissenting. I do not agree with the majority in its interpretation of the contract between Dr. Gardner and Moss.

It is conceded that, under § 68-1415 of Ark. Stats., Moss was bound to give Dr. Gardner a hay baler which would bale hay, and it must also be conceded [as it is impliedly conceded by the majority opinion] that this was not done.

In addition to the above warranty provided by law, the parties had a right to enter into any additional *contract*. This they did. The additional *contract* was that Moss would furnish certain parts under certain conditions. This was separate and distinct from that created by statute.

Thus we are dealing with two separate *contracts* or *warranties*. (a) That one created by law, and (b) the one made by the parties.

To my mind it is clear that the words ". . . all other warranties express or implied" relate to contract (b) and means that Moss would not, under that contract, be *expressly* or *impliedly* bound to do more than furnish

certain parts under certain conditions. In other words, Moss was bound, under contract (b) to do something in addition to contract (a) and not in lieu thereof.

Is any one naive enough to believe that Dr. Gardner would have bought the hay baler if Moss had explained to him that the contract of sale was as the majority now interprets it? Would not Dr. Gardner have been foolish to pay out a large sum of money for something he might not be able to use? Does anyone believe that Moss would ever sell another hay baler to anyone under this kind of a sales contract if he explained it in advance as the majority has interpreted it? If not, then it must be assumed that Moss understood the contract with Dr. Gardner as I have interpreted it, or he meant to deceive him. For one, I do not believe Moss meant to deceive Dr. Gardner.