81 P.2d 703

**THARP v. ALLIS-CHALMERS MFG. CO.**

No. 4344.

Supreme Court of New Mexico.

July 16, 1938.

Hervey, Dow, Hill & Hinkle and Ross L. Malone, Jr., all of Roswell, for appellant.

Otto Smith and Mayes & Rowley, all of Clovis, for appellee.

HUDSPETH, Chief Justice.

This is an appeal from a judgment entered on an implied warranty. Twelve farmers bought listers manufactured by appellant for cash at $190 per machine prior to Mch. 4, 1935. The first offer to return the listers was made during the trial Feb. 10, 1937. They spent $135.85 for repairs and labor and assigned their claims to plaintiff in whose favor judgment was entered for $2,415.85 against appellant. Appellant introduced no testimony, but entered into stipulations under which the contract between appellant and the local dealer in farm machinery and the written orders for the listers were admitted in evidence. The court found that appellant sold and delivered to the farmers a certain type of lister; that the listers were worthless; that the local seller of the machinery, referred to in the contract as "dealer", was the agent of defendant, appellant, at the time of the sale of the machines, and that each of the purchasers of the listers signed an order form which contained the following:

"Warranty. The said machinery is sold by the Dealer with the following warranty, and no other:

"Allis-Chalmers Manufacturing Company warrants that it will repair F. O. B. its factory, or furnish without charge F. O. B. its factory, a similar part to replace any material in its machinery which within one year after the date of sale by the Dealer is proved to the satisfaction of the Company to have been defective at the time it was sold, provided that all parts claimed defective shall be returned, properly identified, to the Company's Branch house having jurisdiction over the Dealer's territory, charges prepaid.

"This warranty to repair applies only to new and unused machinery, which, after shipment from the factory of the Company, has not been altered, changed, repaired or treated in any manner whatsoever, and does not apply to trade accessories, attachments, tools, or implements not manufactured by the Company, though sold or operated with the machinery.

"This warranty to repair is the only warranty either express, implied or statutory, upon which the undersigned purchases said machinery; the Company's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages and warranties, statutory or otherwise, being expressly waived by the undersigned.

"No representative of the Company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract or change or extend this warranty in any manner whatsoever."

The court's conclusions of law contain the following:

"This case, in my opinion, can be and is decided more upon a question of fact

than of law. I have heretofore found that Plaintiff was the agent of Defendant at the time of the sale of these various listers, although it is contended by Defendant that Plaintiff was a dealer, and that these sales were made outright to him as such dealer. I refer to Paragraph Sixth of the Dealer's contract which refers to "resales" made by him. Obviously this term applies to sales made by him to the purchasers, * * * Again, the only warranty appearing in any of these contracts is the limited warranty in the retail purchase order executed in case of each sale, and that warranty is by the Allis-Chalmers Company. From this it follows that these purchasers, if dealing with the agent of the Defendant Company, were dealing with the Company, and that Defendant was bound by the implied warranty that the listers sold were suitable to perform the ordinary work for which they were constructed and sold, and that they were free from defects in material, design and workmanship under normal use, and that they would do the work for which they were purchased. * * * It is argued in the excellent brief of attorney for Defendant that the implied warranty appearing in the sales contract limits the warranties made, and is exclusive of all other warranties. This question has been decided by our Supreme Court, in the two cases of J. B. Colt Company v. Gavin, 33 N.M. 169, 262 P. 529, and J. B. Colt Company v. Chavez et al., 34 N.M. 409, 282 P. 381, in which it was held, in substance, that implied warranty of fitness for intended use is not excluded by express warranty as to materials and workmanship. In my opinion this would apply to the present case, where limited or express warranty appeared in the sales contract, and that by implication, it would not exclude the implied warranty that the machines were free from defects in material, design and workmanship, and for general fitness. * * *"

The assignments of error follow:

"1. The court erred in finding that the plaintiff was the agent of the defendant in making the sales of the defective listers to the various assignors of the plaintiff. II. The court erred in finding that there was any implied warranty of any character between defendant and plaintiff's assignors in the sale of the listers described, because: First, for the reason that there was no privity of contract between them and without privity of contract no such warranty can exist; Second, for the reason that the written contract of sale or so called order blank executed by the purchaser and dealer in each and every sale, expressly negatived the existence of an implied warranty and such warranties will not be implied by law contrary to the expressed intention of the parties."

Assuming without deciding that the so called dealer was the agent of appellant the question for decision is whether or not the contract against implied warranties, quoted above, is valid.

The trial court referred to the J. B. Colt Cases, supra. We held in J. B. Colt Co. v. Gavin, supra, that (262 P. page 530):

"It is not doubted that if a machine is sold for a particular use, there is an implied warranty of suitability. Nor do we doubt that an express warranty as to suitability will exclude any implied warranty thereof. * * * The question therefore is whether an express warranty as to one subject excludes the ordinarily implied warranties as to others. While many cases can be found in which it is broadly said that the presence of express warranties excludes all warranties by implication, and some cases have actually applied such rule, we think that the better reasoning and the great weight of authority support the proposition that the ordinarily implied warranties are not excluded by the mere presence of express warranties relating to different subject-matter, and not inconsistent therewith. See 2 Mechem on Sales, § 1260; 1 Williston on Sales, § 239; 23 R.C.L. 'Sales,' §§ 227, 228; 35 Cyc. 392, and the following case notes: 15 L.R.A.,N.S., 862; 33 L.R.A.,N.S., 501; 102 Am.St.Rep. 609.

"The English Sale of Goods Act provides: 'An express warranty or condition does not negative a warranty or condition implied by this act unless inconsistent therewith.' Benjamin on Sale, (6th Ed.) 746.

"The Uniform Sales Act, § 15, subsec. 6, is in exactly the same language. While these Codes are not in effect in New Mexico, they represent a consensus of able opinion as to what the law ought to be. So this contention is overruled."

The question for decision here is whether or not one can contract against implied warranties and not whether express warranties exclude implied warranties. The language of the contract signed by the purchasers is clear, and the following clause is capitalized: "This warranty to repair is the only warranty either express, implied or statutory, upon which the undersigned purchases said machinery;". The case is similar to that of Minneapolis Threshing Mach. Co. v. Hocking, 54 N.D. 559, 209 N.W. 996, where that court said (page 999):

"Neither do we think that there is any merit to the contention that the contract as contained in the order is void and unenforceable because unfair, unreasonable, and contrary to public policy. There is nothing inherently vicious about the terms set forth in the contract. The plaintiff was selling a threshing machine. The defendant was buying one. Certainly a proper and legitimate business transaction. The parties were dealing at arm's length. Both had the right to contract as they saw fit with reference to such subject-matter, and, having done so, neither can, because subsequently he thinks the terms of his contract are unduly harsh, ask relief on that ground alone. Neither can we believe that there is anything in the provisions complained of inherently tending to be injurious to the public, or subversive of the public good or contrary to good morals. * * * The contract, in the instant case, expressly excludes and negatives all statutory or implied warranties

excepting as to title, and further expressly provides that in no event shall the company (the plaintiff) be subject to any other or further liability, except such as may be expressly given and provided for in the contract itself, and only on the conditions stipulated in the contract. The cases cited are all cases in which the warranties in question were not negatived and excluded, and hold that, since under the circumstances variously disclosed such implied warranties were not negatived, they were available, and any restrictions imposed in the contracts, either as to the requirement regarding notice or as to the remedies applicable, or otherwise, apply only to the express warranties of the contract. In the instant case, however, as we have indicated, all statutory or implied warranties, except as to title, are negatived and excluded by the terms of the contract itself. * * * We therefore hold that, the parties to the contract here in question having by express terms negatived and excluded all implied warranties, the defendant cannot claim the benefit of any such as might have been available had the contract not done so. * * *"

The court in Morris & Co., Inc. v. Power Mfg. Co., 6 Cir., 17 F.2d 689, after listing cases relied upon by the respective parties, says:

"Other questions that suggest themselves are whether without any limitation of remedy, special damages such as plaintiff claims could be recovered; and, if the remedy provided was merely cumulative, as plaintiff contends, whether there was an election by plaintiff, when it rejected the engine, to pursue that remedy. These, however, are contingent upon the first-mentioned question; and in determining that it is not necessary to analyze the cases cited, since it is admitted, as they indeed hold, that the parties to a contract have the right to agree, in express terms or otherwise, upon an exclusive remedy for its breach. * * *"

In the case of Lumbrazo v. Woodruff et al., 256 N.Y. 92, 175 N.E. 525, 75 A.L.R. 1017, 1020, the court said (page 527):

"Neither party was obliged to enter into this contract, and there is no public policy which prevents adult persons of sound mind making such agreements as they please, not prohibited by statute, or contrary to natural justice and good morals. This court and other courts have recognized the validity of agreements limiting or excluding implied warranties. Plimpton v. Brown Bros. Co., 224 N.Y. 724, 121 N.E. 886; Kibbe v. Woodruff, 94 Conn. 443, 109 A. 169; Leonard Seed Co. v. Crary Canning Co., 147 Wis. 166, 132 N. W. 902, 37 L.R.A.,N.S., 79, Ann.Cas.1912D, 1077; Blizzard Bros. v. Growers' Canning Co., 152 Iowa, 257, 132 N.W. 66; Larson v. Inland Seed Co., 143 Wash. 557, 255 P. 919, 62 A.L.R. 444."

In Bekkevold v. Potts, 173 Minn. 87, 216 N.W. 790, 59 A.L.R. 1164, the court said:

"In other words, warranties are not implied in conflict with the express terms of the contract. It has always been competent for the parties to put their entire

agreement in writing and to expressly stipulate that no obligation arising out of an oral agreement, imposition of law, or otherwise, shall rest upon either, save as defined by their written agreement. If the parties wish to avoid the implied warranty, they must in form, or in substance, contract against it."

That court defined an implied warranty as follows:

"An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the contract, nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. It, because of the acts of the parties, is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. * * *"

Sec. 235, 1 Williston on Sales, 2d Ed., reads as follows:

"Fitness for a particular purpose. The warranty of merchantability is not the only warranty that may be implied on the sale of goods. Where the buyer buys goods for a particular purpose a warranty is sometimes implied that the goods shall be fit for that purpose. Here again a distinction must be taken between a bargain for goods by description (which will generally be an executory contract to buy and sell), and a bargain for specified goods (which will generally be an executed sale). If a seller contracts to furnish goods for a specified object it is often possible on a reasonable construction of the contract to hold that he has agreed to furnish something which will accomplish the object desired. On the other hand, if the bargain relates to specified goods, it is more obviously an implication of law not in terms part of the contract between the parties if the seller is held to warrant the fitness of the article for the purpose designed.

"It should be noticed also that fitness for a particular purpose may be merely the equivalent of merchantability. Thus the particular purpose for which a reaping machine is generally designed is reaping. If it will not fulfill this purpose it is not merchantable. The particular purpose, however, may be narrower; a reaping machine may be desired for operation on rough ground and, though it may be a good reaping machine, it may yet be impossible to make it work satisfactorily in the place where the buyer wishes to use it. The principle already laid down that a manufacturer impliedly warrants his goods to be merchantable includes, therefore, the doctrine sometimes stated in this way—that the manufacturer of goods impliedly warrants that they are reasonably fit for the general purpose for which they are manufactured and sold. * * *"

See also Dowagiac Mfg. Co. v. Mahon et al., 13 N.D. 516, 101 N.W. 903; The Nuska, D.C., 300 F. 231, affirmed R. R. Ricou & Sons v. Fairbanks, Morse & Co., 5 Cir., 11 F.2d 103; Wall v. Britton Stevens Motor Co., 251 Mass. 517, 146 N.E. 693,

43 A.L.R. 647, annotation 648; and annotations in 34 A.L.R. 535, 541; Bekkevold v. Potts, 173 Minn. 87, 216 N.W. 790, 59 A.L.R. 1164, 1219; Dunn Road Machinery Co. v. Charlevoix Abstract & Eng. Co., 247 Mich. 398, 225 N.W. 592, 64 A.L.R. 947, 951; and 90 A.L.R. 410. See, also, 77 A.L.R. 1165.

 Appellee urges that the contract is void as against public policy, but we are unable to concur in this view. 12 Am.Jur., Contracts, sec. 172, p. 670, says:

"As the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. Rules which say that a given agreement is void as being against public policy are not to be extended arbitrarily, because 'if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be enforced by courts of justice'. The paramount public policy is that freedom to contract is not to be interfered with lightly. It is the court's duty to sustain the legality of a contract in whole or in part whenever it can do so. Accordingly, many courts have cautioned against recklessness in condemning agreements as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning which it is the duty of the lawmaking power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law. Other courts have approved the remark of an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths. Considerations such as these have led to the statement that the power of the courts to declare an agreement void for being in contravention of sound public policy is a very delicate and undefined power and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. * * *"

Appellee also maintains that the contract is void for want of mutuality, and cites 12 Am.Jur., Contracts, secs. 13, 14, p. 509, and other authorities. According to the findings of the court the appellant sold and delivered to the purchasers a certain type of lister—a specific chattel—upon written orders signed by the purchasers. In other words, the purchasers received the particular machine ordered under a written contract containing a limited warranty and a specific covenant against implied warranties. No complaint is made that the appellant failed to comply with the express warranty. The contract is fair on

its face and must be the guide. It is suggested that the purchasers did not understand it, but the language is plain. The fact that it contained the clause "proved to the satisfaction of the Company to have been defective at the time it was sold" would not make the provision void for want of mutuality. Ajax Rubber Co., Inc., v. White et al., 216 Mo.App. 283, 264 S.W. 466.

The learned counsel for appellee points out that some states have gone so far as to enact statutes prohibiting contracts which eliminate implied warranties of fitness unless the purchaser has other remedies, citing Palaniuk et al. v. Allis-Chalmers Mfg. Co., 57 N.D. 199, 220 N.W. 638 and Minneapolis Threshing Machine Co. v. Hocking, supra, and urges us to promulgate such a doctrine in this state and "keep pace thereby with the march of the times toward a more liberal system of jurisprudence." It has long been the policy of this court not to invade the legislative field. The step urged upon us is a very serious one. The material language used in the contract of warranty involved in this case is practically the same as that approved by the National Automobile Chamber of Commerce and embodied in the warranties of the motor vehicle manufacturers of the United States. While these purchasers of listers suffered loss the far reaching consequences of holding that the contract of warranty in general use in one of our largest industries could be set aside and held void—warranties affecting all sellers of new motor vehicles —is not to be considered without legislative edict.

For the reasons stated the judgment of the district court will be reversed and the cause remanded with instructions to dismiss the complaint, and

It is so ordered.

SADLER, BICKLEY, BRICE, and ZINN, JJ., concur.