[No. 37326.   Department One.   December 24, 1964.]

BERNARD W. CHRISTENSEN et al., *Respondents*, v. J. M. HOSKINS et al., *Appellants*.*

*Blair, Thomas, Hicks, O'Hern & Hokanson,* for appellants.

*Comfort, Dolack & Hansler* (*Robert A. Comfort,* of counsel), for respondents.

*Reported in 397 P. (2d) 830.

418

SHORETT, J.[†]—The respondents Christensen purchased a home which had been constructed by the appellants Hoskins. As the Federal Housing Administration insured the financing of the house, the builder delivered to the purchaser a written warranty that the house had been constructed in substantial compliance with the FHA approved plans and specifications. After the FHA had approved the original plans, the builder added a shower in the utility room and finished the wall with enamel paint, which was not waterproof, as required by the approved specifications. Because of the defective waterproofing, water seeped through the wall, causing extensive dry rotting in the floor and supporting beams of the living room. Thus, it was necessary to replace 5 feet of the supporting beam, the floor joists, the oak floor and some wall studding.

The trial court found a breach of the warranty and entered judgment for $8,000 against the Hoskinses. This was the sum asked for in the Christensens' complaint, and found by the trial court to be the difference between the value of the house, if there had been no dry rot, and the value with the dry rot condition.

Upon this appeal, the Hoskinses contend that the warranty does not apply because the shower was added after FHA approval of the plan; that no proper notice of breach of warranty was given; that the Christensens should have mitigated damages; and, even if the warranty does apply, the proper measure of damages is the cost of repair.

We are satisfied that the warranty covered additions such as the utility room shower by explicitly guaranteeing that the house "is constructed in substantial conformity with the plans and specifications (including any amendments thereof, or changes and variations therein)."

The warranty required notice of any defect within 1 year, and the respondents complied by written notice saying "Plaster is cracking in several rooms in the home. The half-bath and utility room are in bad condition." We regard this as adequate notification to the appellants and

†Judge Shorett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

the FHA of the visible defects. The respondents could not be expected to know the consequences of such defects. Such matters would more likely be within the knowledge and competency of the builder and the FHA.

We come next to the question of damages. Mr. Hoskins testified that the defects could be corrected for $500. Mr. Christensen testified that he had completed the repairs on the building, had done much of the work himself and had had a carpenter work with him, gave no estimate of the cost of repair, but estimated that the house would have been worth at least $8,000 more if there had been no dry rot. There was no other testimony on damages. Faced with these two extremes, the trial judge remarked:

" . . . Now, I'll confess, I'm a little bit taken aback at an $8000 figure, but I don't know what else the court can do. Mr. Hoskins says he could repair it for $500. Now, I think that's foolish; he can't do it. . . ."

Later, on the motion for reconsideration, the court said:

" . . . However, the way the case was tried places the court in a tremendously difficult position, because, actually, the case ended up with the only evidence in the case being the owner's own testimony as to the difference [in] the value before and after. If that's the correct measure of damages, that's all the court had to go on. You put in no testimony regarding it. Your man gave no estimate of the cost of repairs, nor anything by which the court could vary that figure. . . .

"I think what you're up against in this case is that the only evidence in the case that the court had to go on at all, as to the damages suffered, was the testimony of the plaintiff himself, as to the difference in the value of the house before and after. Now, that's all the court had to go on. Now, if the rule is correct, that that is the measure of damages, then I don't see what else the court could have done."

With such unsatisfactory alternatives in the evidence, the trial court selected Mr. Christensen's testimony as the more believable, and entered findings of fact to the effect that the house would have been worth $8,000 more if it were not for the damages caused by the dry rot.

In our opinion, the damages properly to be allowed are the cost of repair and such other damages as are proved to be the direct result of the breach of warranty.

In a somewhat similar case of *Bernbaum v. Hodges*, 43 Wn. (2d) 503, 508, 261 P. (2d) 968 (an action for breach of guarantee provisions of a real estate contract), this court approved the "cost of repair" rule against a contention that the damages should be awarded on the difference in value "before and after" and approved the following statement from *Mahan v. Springer*, 155 Wash. 98, 99, 283 Pac. 667:

" 'We have held that, where there is a substantial compliance with the contract in cases of this kind, the measure of damages to the owner is what it would cost to remedy these defects, but that, where there is not a substantial compliance and where to remedy the defects it is necessary to tear down and rebuild large portions of the structure, the measure of damages is the difference between the value of the building as constructed and its value if it had been constructed in accordance with the contract.' "

In *Baldwin v. Alberti*, 58 Wn. (2d) 243, 245, 362 P. (2d) 258, this court reviewed many authorities on the subject and approved the following from Restatement, Contracts, § 346:

" ' § 346. Damages for Breach of a Construction Contract. (1) For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

" ' (a) For defective or unfinished construction he can get judgment for either

" ' (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve *unreasonable economic waste*; or

" ' (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve *unreasonable economic waste*.' (Italics ours.)

" '*Comment on Subsection* (1a),' following the above-quoted section of the Restatement, states:

" ' . . . Sometimes defects in a completed structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable. The law does not require damages to be measured by a method requiring such economic waste. *If no such waste is involved, the cost of remedying the defect is the amount awarded as compensation for failure to render the promised performance.*' (Italics ours.)"

In the instant case, the facts demonstrate that the defects could be repaired without "unreasonable economic waste."

█ The appellants' contention that the respondents did not minimize their damages by making earlier repairs cannot be considered because it was neither raised by the pleadings nor properly presented to the trial court.

Since an incorrect measure of damages was applied and there is an insufficiency of testimony under the proper rule, the cause is remanded for a new trial on the question of damages.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.