684 P.2d 534

**Michael R. and Debra R. NEWCUM, Plaintiffs-Counterdefendants,**

v.

**L.E. LAWSON and Bernadine Lawson, Defendants-Counterclaimants, Third-Party Plaintiffs-Appellees,**

v.

**David H. HUNT, d/b/a Young America Enterprises, Inc., Third-Party Defendant-Appellant.**

**No. 7258.**

Court of Appeals of New Mexico.

May 17, 1984.

George F. Stevens, Robinson, Stevens & Wainwright, P.A., Albuquerque, for defendants-counterclaimants, third-party plaintiffs-appellees.

Deborah S. Seligman, Robert H. McBride, Albuquerque, for third-party defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

Defendants, L.E. Lawson and Bernadine Lawson, and third-party defendant, David H. Hunt, d/b/a Young America Enterprises, Inc. (Builder), have each appealed judgments entered by the trial court following a bench trial. The plaintiffs, Michael R. and Debra R. Newcum, purchased a home in the northeast heights of Albuquerque from L.E. Lawson and Bernadine Lawson. The Newcums sued the Lawsons for rescission, breach of contract, and damages arising from the sale of the property to them, alleging that the Lawsons had knowingly failed to disclose a serious defect in the home resulting from underground water flooding.

This case was previously before us on appeal from the judgment of the trial court entered in favor of the Newcums against the Lawsons. *See Newcum v. Lawson,* 100 N.M. 512, 672 P.2d 1143 (Ct.App.1983) (*Newcum I*).

The Builder contends in his appeal that the trial court erred in (1) finding that the Builder expressly warranted the cause of or solution to the flooding problem; (2) failing to find that the water problem was proximately caused by the negligence of a landscaper; (3) finding that the Builder breached an implied warranty of habitability; and (4) finding that the Builder was liable for indemnification to the Lawsons.

The Lawsons claim in their cross-appeal that the court erred in failing to find that the Builder was liable to them for all of the compensatory damages awarded to plaintiffs.

After being sued by the Newcums, the Lawsons filed a third-party complaint against Builder seeking indemnification for the damages awarded against them in favor of the plaintiffs. The third-party complaint alleged both negligence and breach of contract on the part of Builder. Following a bifurcated trial, the court determined that the Builder had an obligation to correct the defects in the home and had breached an express warranty as to the cause of the problem. The court also determined that the Builder had breached an implied warranty of habitability. The trial court in the first phase had awarded damages to the Newcums and against the Lawsons in the sum of $52,190 compensatory damages and $5,000 punitive damages.

The trial court in *Newcum II* found that the duct accumulation was not the result of excessive watering. Based upon the findings adopted by the court, it awarded judgment in favor of the Lawsons against the Builder in the sum of $10,000 on the third-party complaint. The court denied the

Lawsons' claim for indemnification for other damages.

*Facts*

On January 10, 1979, the Lawsons entered into an agreement with David H. Hunt, d/b/a Young America Enterprises, Inc., for the Builder to build a custom home to plans and specifications of the Lawsons. The Lawsons moved into the home in April, 1979. The house was constructed with a concrete slab and had underground heating and air-conditioning ducts. After the Lawsons moved into the home in April, they hired an independent contractor to landscape the property. The landscaper also installed a sprinkler system and bubbler system in the yard.

In early August, 1979, the Lawsons discovered that the underground heating and air-conditioning ducts beneath their home were filled with water. The Lawsons notified the Builder, who came to the house and inspected the problem. The Builder pumped the ducts and informed the Lawsons that the water was coming from their lawn sprinkler and bubbler system and suggested that they should use less water on their yard and construct a deep cement retaining wall adjacent to their home to divert the water.

The Builder was called by the Lawsons again on August 21, September 11, and December 11, 1979, concerning repeated water problems. The Lawsons listed the house for sale in the spring of 1980 for a price of $185,000. At the time of the sale, the Lawsons did not disclose to the Newcums the water flooding problem. After closing the sale in July, 1980, the Newcums went on vacation. On their return, the Newcums discovered that the ducts were flooded and notified the real estate broker.

The broker contacted the Builder, who contacted the Newcums and informed them that there had been prior problems with flooding and that he had instructed the Lawsons how to correct the problem, but they had failed to do so.

The Newcums made demand upon the Lawsons to correct the water problem but they failed to do so. The Newcums filed suit against the Lawsons seeking rescission of the contract, and damages. At trial the exact cause of the water flooding problem was not established. Dr. Richard Heggen, a civil engineer from the University of New Mexico, and an expert called by the Newcums in *Newcum I,* testified that since the Newcums testified that they had essentially quit irrigating for about three months and water continued to seep into the duct works, he could only reasonably conclude that the flooding problem was not due to the irrigation system. Dr. Heggen testified that whatever the source of the water flooding, the problem of eliminating water from the ducts could be corrected for the sum of $3,000, and that in his opinion it would cost approximately $10,000 to identify and dry up the main source of the water. Following trial on the merits in *Newcum I,* the Newcums were awarded $52,190.00 compensatory damages and $5,000 punitive damages against the Lawsons.

During the pendency of the litigation, the Lawsons filed a third-party complaint against the Builder seeking indemnification for any damages they might be ordered to pay to the Newcums. The trial court in *Newcum I* found that there was a subterranean water problem on the property that existed at the time the Lawsons sold the home to the Newcums. In adopting its findings, the trial court did not determine the exact cause of the water flooding problem. The court found in its finding no. 39, that "It will cost $10,000 to correct the subterranean water problem under the property of Plaintiffs."

Both the Builder and the Lawsons have appealed from the judgment of the trial court.

I. *Builder's Appeal*

 (A) *Claim of express warranty*

The Builder contends that the trial court erred in adopting finding of fact no. 8, and conclusions of law nos. 2 and 3. Finding no. 8 provides:

 8. David H. Hunt, on behalf of Young America Enterprises, Inc., expressly war-

ranted to the Lawsons, who relied upon the same, that there was no problem with the home and that the accumulation of water in the heating-air condition duct was merely the result of excessive watering.

Conclusions of law nos. 2 and 3 specified:

2. Young America Enterprises, Inc., builder-vendor of the new home, has an obligation to correct the defects pursuant to express warranties and implied warranties of habitation.

3. . Young America Enterprises, Inc., breached an express warranty and implied warranty of habitation that the home had no duct or subterranean water drainage problems.

Based upon the above findings and conclusions, the trial court found that the Builder was liable to the Lawsons to correct the water problem and that the reasonable cost of locating and repairing the problem was $10,000.

Builder denies that he made any express warranty or representation that the duct problem was caused by excessive watering or that reducing the amount of watering would alleviate the problem.

The Lawsons contend that the Builder orally made an express warranty to the Lawsons "that the problem causing the water to accumulate in the air conditioning and heating duct work was that of excessive watering of the landscaping." The Lawsons contend that they reasonably relied upon the assurances of the Builder that the problem was excessive landscaping watering and that the Builder should be financially responsible for the Lawson's reliance upon this "warranty."

■ The Builder admits that he stated to the Lawsons that the problem causing the water to accumulate in the ducts was due to excessive watering as well as to the installation by a landscaper of a bubbler system, but denies that such statement constituted a warranty or representation as to the cause of the water problem. The Builder argues that this statement amounted to a statement of opinion and not a

warranty or representation. We agree that the oral statement did not constitute an actionable express warranty.

A warranty has been defined as " 'an assurance by one party to a contract of the existence of a fact upon which the other party may rely.' " *Steadman v. Turner*, 84 N.M. 738, 507 P.2d 799 (Ct.App.1973). As stated in *Shippen v. Bowen*, 122 U.S. 575, 7 S.Ct. 1283, 30 L.Ed. 1172 (1887), an express warranty in order to be actionable must be made at the time of sale:

"[A]ny affirmation of the quality or condition of the thing sold, (not uttered as matter of opinion or belief,) *made by the seller at the time of sale,* for the purpose of assuring the buyer of the truth of the fact affirmed, and inducing him to make the purchase; if so received and relied on by the purchaser, is an express warranty * * *." [Emphasis added.]

■ A statement concerning the subject matter of a sale, made subsequent to the bargain cannot amount to a warranty unless there is new consideration. 8 S. Williston, *A Treatise on the Law of Contracts* § 974 (3d ed.H.E. Jaeger 1964); *see also Burt v. Horn*, 97 N.M. 515, 641 P.2d 546 (Ct.App.1982). There is no evidence of new consideration in connection of the claimed express warranty based on the Builder's oral statement. This, however, does not dispose of the express warranty issue.

The written construction contract entered into between the Builder and the Lawsons stated in part:

Seller(s) [Builder] further agree to deliver to Purchaser(s), at time of closing, a Certificate of Completion *and one year warranty as required by FHA and VA. * * * There are no terms, conditions or warranties expressed or implied or statutory as [to] the quality, fitness, capacity, or otherwise, other than those covered by FHA or VA* regarding the real estate described in this agreement and the improvements. * * * [Emphasis added.]

The third-party complaint of the Lawsons, directed against the Builder, alleged in paragraph 4 that "[p]ursuant to the con-

tract to purchase the house, *David H. Hunt did warrant that said house was constructed in a workmanlike manner and that no material defects existed in the construction of said house."* [Emphasis added.] The answer to the third-party complaint expressly admitted the allegations of paragraph 4.[1]

In the third-party complaint, the Lawsons did not specifically plead the theory of implied warranty or an implied warranty of habitability. On the first day of trial in *Newcum I*, the Lawsons moved to be permitted to amend their third-party complaint to include a claim of implied warranty of fitness for habitability. Builder objected to the amendment, but the trial court permitted the amendment. The trial court did, however, grant a rehearing to permit the Builder additional opportunity to defend against such claim.

■ The Builder's admission that incident to the sale of the home he gave an express warranty of workmanship and a warranty as to the lack of any material defect in the residence waived any defense of the lack of such express warranty under the provisions of the construction contract.

■ The general rule in contract actions is that the burden of proof is on the party seeking to prove the existence of a fact. *Harper v. Freeman*, 3 Haw.App. 1, 639 P.2d 1113 (1982). The Lawsons established the existence of an express warranty of workmanship given by the Builder that the residence was free from any material defects. The Lawsons also established that shortly after they purchased the property the underground heating and air-conditioning ducts were flooded on a number of occasions.

■ A warranty that a building will be erected in a workmanlike manner, free from any material defects, constitutes a

contractual agreement that the work will be performed in a proper manner, and that there do not exist any significant defects in the structure. *See Cosmopolitan Homes, Inc. v. Weller*, Colo. 663 P.2d 1041 (Colo. 1983). Testimony of the existence of recurring water in the underground ducts of the home shortly after its construction and occupancy was substantial evidence that a condition existed contrary to the express warranty of workmanship and express warranty that the property was free from any material defects. There was evidence that the source of the water flooding was irrigation. This raised a conflict in the evidence as to breach of the express warranty; however, it was for the trial court to resolve the evidentiary conflict.

■ Under the facts before us, we find no error in the trial court's determination that the Builder breached an express warranty of workmanship and an express warranty that the property was free from any material defects.

(B) *Claim that landscaper's negligence proximately caused the water problem.*

The Builder also asserts that it was error for the trial court to refuse his tendered findings of fact that "the sole source and cause of the water problem was caused by the trenching system" installed by a landscaper hired by the Lawsons, and that the water problem did not exist prior to the installation of the watering system.

■ Neither the Lawsons nor the Builder conclusively established the source of the underground water. The Lawsons presented evidence that, upon advice from the Builder, they stopped watering their lawn for prolonged periods of time and the water flooding still recurred. The Lawsons also presented evidence that a main

---

1. Even in the absence of an admission of an express warranty, language in a construction contract that seller warrants completion of construction in substantial conformity with approved plans and specifications required to purchase homes under financing insured by the Federal Housing Administration or Veterans

Administration has been held to give rise to a cause of action for breach of an express warranty when substantial defects appear in the new dwelling within one year. *See Christensen v. Hoskins*, 65 Wash.2d 417, 397 P.2d 830 (1964); *see also* Annot., 25 A.L.R.3d 383 (1969).

roof drain was located adjacent to the underground ducts. Although the Builder presented evidence tending to indicate that the water flooding was due to the installation of the irrigation system, the trial court was not bound to accept this version of the facts.

 The evidence was clearly conflicting. While the evidence cited by Builder could have supported a different conclusion by the trial court, it is not the function of an appellate court on review to weigh the testimony and evidence presented below, but rather to ascertain whether there is substantial evidence to support the trial court's findings of fact and conclusions. *Cardenas v. United Nuclear Homestake Partners*, 97 N.M. 46, 636 P.2d 317 (Ct. App.1981). If the record contains evidence, or reasonable inferences therefrom, which will support the trial court's findings, the judgment of the court will not be disturbed on appeal. *Id.* It was not error for the trial court to refuse the Builder's requested findings of fact that the proximate cause of the water flooding was due to the landscaping installation.

### (C) *Claim of implied warranty*

 Builder also contends that the trial court erred in concluding that he breached an implied warranty of habitability that the home had no duct or subterranean water drainage problems. The Lawsons urge this Court to recognize the existence of an implied warranty of fitness for habitability arising from the sale of a new residence. *See Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); *Duncan v. Schuster-Graham Homes, Inc.*, 194 Colo. 441, 578 P.2d 637 (1978). New Mexico has rejected this implied warranty in landlord-tenant situations, *see T.W.I.W., Inc. v. Rhudy*, 96 N.M. 354, 630 P.2d 753 (1981), but has not decided whether the implied warranty exists in connection with the sale of a new house.

We need not reach this contention since, under the express terms of the written construction contract between the parties, there could be no implied warranty of habitability.[2] The express written terms of the contract between the parties negated the existence of any implied warranties. The parties can contract against the existence of implied warranties. *Tharp v. Allis-Chalmers Mfg. Co.*, 42 N.M. 443, 81 P.2d 703 (1938); *see also Moss Theatres, Inc. v. Turner*, 94 N.M. 742, 616 P.2d 1127 (Ct. App.1980). However, *see* NMSA 1978, § 55-2-316.

 Our determination that under the written contract between the parties in this appeal there could be no implied warranties does not, however, require reversal of the trial court's judgment. The trial court predicated its award of damages against the Builder upon both a finding that the Builder had breached an express warranty and also an implied warranty. A finding as to breach of an express warranty of workmanship and the absence of a material defect, even in the absence of a finding of breach of an implied warranty of habitability, was sufficient to sustain the trial court's decision. Findings of fact adopted by the trial court are to be construed so as to uphold rather than defeat a judgment, and, if from the facts found, the other necessary facts to support the judgment may be reasonably inferred, the trial court's judgment will not be disturbed on appeal. *Cardenas.*

 Even if a finding of fact or conclusion is erroneous, if it is unnecessary to the court's decision, the mistake is not a basis for reversal. *Cochrell v. Hiatt*, 97 N.M. 256, 638 P.2d 1101 (Ct.App.1981). Here, the decision of the trial court can properly be sustained upon the basis of the court's finding as to the existence of an express warranty which was breached by the Builder. The answer of the Builder admitted

---

**2.** An "implied warranty" is one which arises not from the express terms of an agreement, but is a promise imposed by law by virtue of the relationship of the parties, the nature of the transaction and the surrounding circumstances. *Car-*

*michael v. Lavengood*, 112 Ind.App. 144, 44 N.E.2d 177 (1942); *Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612 (1958); *see also Tharp v. Allis-Chalmers Mfg.*, 42 N.M. 443, 81 P.2d 703 (1938).

the existence of a warranty that the residence was erected in a workmanlike manner and that the structure was free from material defects.

 As expressed in *Moss Theatres,* a contract which contains a guaranty or warranty, express or implied, that the builder's work will be sufficient for a particular purpose or for a certain result, places the risk of accomplishing such purpose or result upon the builder.

The trial court's finding as to a breach of an implied warranty of habitability was harmless error in light of the other findings adopted by the court and which were sufficient to sustain the finding of liability.

(D) *Claim that trial court erred in determining amount of damages*

For his final point on appeal, the Builder asserts that even if the trial court's finding of liability against him is sustained, the proper award of damages nevertheless should be limited to a maximum of $4,000, rather than $10,000 as awarded below. Because the arguments advanced by the Builder under this point also directly relate to issues raised by the Lawsons in their cross-appeal, we jointly address Builder's contentions concerning damages with our discussion of the cross-appeal.

II. *Lawsons' Cross-Appeal*

The trial court in *Newcum I* awarded compensatory damages in the sum of $52,-190 against the Lawsons in favor of Michael R. Newcum and Debra R. Newcum. The breakdown of the damage award was: (1) $1,300 to replace cabinets; (2) $300 to replace trees; (3) $35,000 as loss of value of the residence; (4) $5,000 to correct the duct problem; (5) $10,000 to locate the source of the water; and (6) $590 for a space heater.

 In an action for breach of contract the one who fails to perform the agreement is justly responsible for all of the damages flowing naturally from the breach. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980). The general rule of foreseeability is applicable in measuring

damages for breach of contract. *E & B Specialties Co., Inc. v. Phillips,* 86 N.M. 331, 523 P.2d 1357 (1974); *see also State Farm General Insurance Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974).

 The issue of damages awarded to the Newcums against the Lawsons was discussed in our earlier opinion in *Newcum I.* Dr. Heggen testified that it would cost approximately $10,000 to locate and correct the source of the water which was seeping under the house. He testified that unless the entire water problem was resolved, structural problems due to settling of the residence could occur. The import of this testimony was that the sum of $10,000 would identify and correct the source of the underground water problem. The testimony of Dr. Heggen concerning the amount required to correct the water flooding is supported by substantial evidence.

 The Lawsons contend in their cross-appeal that the trial court erred in not finding that the Builder was required to indemnify them for other compensatory damages awarded to the Newcums against them. We agree that the trial court erred in not awarding $5,000 for correcting the duct problem. Findings Nos. 35, 37 and 38 in *Newcum I* are to the effect that some foundation damage to the house had occurred, that additional foundation damage is expected to occur until the source of the water was found and corrected, and $5,000 was awarded "to correct the *immediate* problem with the ducts to keep the home from sustaining significant structural damage." [Emphasis added.] This was a damage item separate from the $10,000 item. The sum of $300 to replace trees, and $1,300 to replace cabinets were not damages for which the Builder should be required to indemnify the Lawsons. The Newcums testified that the trees died due to infestation of insects and the failure of the Lawsons to spray them. The cost of replacing the cabinets in the sum $1,300 was an extra item not included in the original construction contract. The cost of the space heater to provide heat while the heating ducts were not operating, in the sum of $590 was, however, a reasonably foreseea-

ble element of damages and should have been included in the trial court's award.

The remaining compensatory damages recovered by the Newcums against the Lawsons, in the sum of $35,000 for loss of value of the residence was not properly subject to indemnification by the Builder. This dealt with the bargain between the Newcums and the Lawsons, and not with the Builder. Similarly, the punitive damage award of $5,000 was not subject to indemnification by the Builder since that award was predicated upon the ground that the Lawsons knew of the subterranean water problem and knowingly withheld that information from the Newcums. *See Newcum I.*

The judgment of the trial court finding Builder liable to the Lawsons for breach of an express warranty of workmanship and absence of material defect is affirmed. The damage awarded of $10,000 is affirmed; however, the trial court erred in failing to award an additional $5,590, as explained herein. This amount shall be awarded on remand. The cause is remanded for further proceedings consistent herewith. Builder shall bear his appellate cost.

IT IS SO ORDERED.

WOOD and NEAL, JJ., concur.