781 P.2d 1170

**Ragina C. WILLIAMS, Petitioner–Appellant,**

v.

**Rodney WILLIAMS, Respondent–Appellee.**

No. 10987.

Court of Appeals of New Mexico.

Aug. 22, 1989.

Certiorari Denied Oct. 18, 1989.

Elizabeth Cunningham, Sp. Asst. Atty. Gen., Human Services Dept., Roswell, for petitioner-appellant.

Michael E. Dargel, McCormick, Forbes, Caraway & Tabor, Carlsbad, for respondent-appellee.

## OPINION

ALARID, Judge.

Mother appeals from the trial court's order denying her petition for child support arrearages. She challenges some of the findings of fact the trial court made and the trial court's conclusion that she waived her right to collect the child support arrearages. We affirm and hold the trial court could reasonably have concluded mother waived her right to collect the child support arrearages.

## FACTS

The parties' son was approximately 19 months old when they divorced in New Mexico in 1976. Mother was awarded sole

custody of the parties' son and father was awarded reasonable visitation rights. Father was also ordered to pay $100 per month in child support.

In March 1978, mother remarried and moved to Texas. Father claimed that shortly before this move, mother told him she did not want his money or for him to ever see their child again. Mother denied this. Instead she claimed she sent father a certified letter giving her sister's address in Carlsbad, New Mexico, as a forwarding address and informing father he could deposit his child support payments in a savings account mother opened in Carlsbad before she moved to Texas. After she moved to Texas, mother changed the child's last name without notifying father.

While she lived in Texas, mother filed a URESA petition in New Mexico for child support arrearages that had accrued since February 1978. *See* NMSA 1978, §§ 40–6–1 to 40–6–41 (Repl.1986). She moved to Oklahoma during the pendency of this proceeding. The trial court conducted a hearing on mother's URESA petition in October 1978. Father appeared at this hearing and claimed mother had denied him visitation since March 1978. Mother did not appear at the hearing. The trial court found father had deposited $600 in a savings account in New Mexico, which represented child support arrearages that had accrued through the date of the hearing on mother's URESA petition. The trial court ordered father to give this money to mother when he picked up the child for a thirty-day visitation, and to continue to deposit $100 per month into the savings account for child support. Mother testified she received a copy of this order while she was living in Oklahoma. Both father and mother testified that their understanding of the October 1978 order was that father was not obligated to pay any child support until mother allowed him a thirty-day continuous visit with the child. This visit never occurred. Nevertheless, father continued to deposit $100 per month into the savings account for approximately two years thereafter, at which time he withdrew the funds due to financial difficulties.

Between March 1978 and December 1978, mother moved five times, two moves within Texas, and three moves within Oklahoma. Father, his parents, and mother's parents lived in Carlsbad during this time. Father testified he did not see the child during this time and that he made some efforts to locate the mother through her family, but they were uncooperative. Mother testified she did not "think to" inform father of her various moves and that she did not encourage the child to have any contact with her father during this time. She also testified the only contact she had with father during this time was the March 1978 letter she sent him telling him where he could deposit his child support payments, even though she returned to Carlsbad each year for vacation and allowed her parents and father's parents to see the child. She also testified she never informed father of her trips to Carlsbad. Father testified his parents did not tell him of their visits with the child until several months after they occurred. Father also testified his parents told him in December 1987 that mother had "led them to believe" she would deny them visitation if they told father of her trips to Carlsbad. Mother moved back to Carlsbad in December 1987, and shortly thereafter commenced efforts to collect child support between October 1978 and when she filed the petition in March 1988 for the child support arrearages that had accrued since October 1978. Father testified mother told him she intended to use the child support arrearages to buy a home.

On March 8, 1988, father filed a petition to change custody. On March 25, 1988, mother filed a petition for child support arrearages that had accrued since October 1978. On July 22, 1988, the trial court awarded the parties joint custody of the child and ordered father to pay $100 per month in child support. This order is not at issue in this appeal. On August 11, 1988, the trial court entered an order denying mother's petition for child support arrearages, finding that she waived her right to collect them. It is from this order that wife appeals. We set out other facts as they become relevant to our discussion.

## DISCUSSION

 Mother challenges some of the trial court's findings of fact as not supported by substantial evidence and claims the trial court should have adopted her requested findings of fact and conclusions of law. In determining whether a trial court's findings of fact are supported by substantial evidence, we view the evidence in the light most favorable to support the finding, and we do not consider any evidence unfavorable to the finding. *See Trujillo v. Romero,* 82 N.M. 301, 481 P.2d 89 (1971). We do not reweigh the evidence or substitute our judgment for the trier of fact. *See Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App. 1985). The duty to weigh the credibility of witnesses and to resolve conflicts in the evidence is for the trial court, not this court. *See Dibble v. Garcia,* 98 N.M. 21, 644 P.2d 535 (Ct.App.1982). We liberally construe a trial court's findings in determining whether they support the trial court's judgment. *See Arnold v. Ford Motor Co.,* 90 N.M. 549, 566 P.2d 98 (1977). An erroneous finding of fact is not a basis for reversal if it is unnecessary to the trial court's decision. *See Newcum v. Lawson,* 101 N.M. 448, 684 P.2d 534 (Ct.App.1984). We will affirm a trial court's decision when it reaches the correct result for the wrong reason. *See H.T. Coker Constr. Co. v. Whitfield Transp., Inc.,* 85 N.M. 802, 518 P.2d 782 (Ct.App.1974). Where the trial court's findings and conclusions are supported by the evidence, it is not error to deny requested findings and conclusions to the contrary. *See Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App.1970).

 The findings mother challenges on appeal that we determine are necessary to support the trial court's decision are findings 8, 10, 11, and 13. *See Newcum v. Lawson.* Therefore, we do not address the other findings mother challenges on appeal. *See id.* Moreover, since we decide with some modifications that these findings are supported by the evidence and they support the trial court's decision, we conclude the trial court did not err in refusing mother's requested findings and conclusions. *See Wright v. Brem.*

 The trial court's finding number eight states mother had not asked father for child support since October 1978, she did not collect any of the money father deposited in the savings account in Carlsbad for two years, and she did not allow the child to contact father for ten years. Mother challenges the first part of this finding that she had not asked father for child support since October 1978. While admitting she did not ask father for child support from October 1978 until she returned to Carlsbad in December 1987, she claims this finding lacks evidentiary support because of her efforts to collect child support after returning to Carlsbad in December 1987. It is clear from the record and the transcript that this finding was meant to apply between October 1978 and when mother began her efforts to collect child support arrearages after she moved back to Carlsbad in December 1987. Findings are not to be construed with the strictness of special pleadings; in the case of ambiguous findings, an appellate court is bound to indulge in every presumption to sustain the judgment. *Ledbetter v. Webb,* 103 N.M. 597, 711 P.2d 874 (1985). *See also Arnold v. Ford Motor Co.*

 Mother also challenges the trial court's finding number 10 which states mother told father in October 1978 she would not allow a thirty-day continuous visitation and that she did not want his money or for him to ever see the child again. This finding is undoubtedly based on father's testimony because he was the only one to testify about this conversation. Although the date contained in this finding is not supported by the evidence because father testified this conversation took place shortly before mother moved to Texas in March 1978, the date is not material to the ultimate finding concerning the substance of the conversation. Father's testimony provides substantial evidence to support the material portions of this finding. Findings of fact adopted by the trial court are to be construed so as to uphold rather than defeat the judgment, and, if from the facts

found, other necessary facts to support the judgment may reasonably be inferred, the trial court's judgment will not be disturbed. *Newcum v. Lawson,* 101 N.M. 448, 684 P.2d 534 (Ct.App.1984).

The trial court's finding number 11 states that father made reasonable efforts to find the child and paid $100 into the savings account in Carlsbad for over two years and then stopped. Mother challenges the first part of this finding that father made reasonable efforts to find the child. Mother seems to argue the evidence presented at the hearing would only support a finding that father made no efforts to locate the child. Mother relies on the evidence that she left her sister's forwarding address when she moved to Texas in March 1978, and that father never sent her anything through her sister's address or asked her sister where she was. However, father testified that, when he attempted to contact mother's family concerning mother's whereabouts, they were uncooperative.

Mother also relies on evidence that father had her address in Pittsburg, Texas, when she filed the URESA proceedings. However, mother testified she moved from Pittsburg, Texas, to Chickasha, Oklahoma, during the URESA proceedings. Father testified that, when the district attorney wrote to the state of Texas concerning his visitation rights, the state of Texas replied by stating mother did not live at the address they had for her anymore.

She also relies on the evidence that father read an article in the newspaper about her loss of a baby in 1980 while she lived in Elmore City, Oklahoma, and that she continued to live there until 1984, without father making any attempts to contact her there. However, the trial court had before it other evidence of mother's various moves without notifying father of them and father's limited financial means.

Mother further relies on evidence that father's parents knew where the child was and that father knew they were in contact with the child but that he never made any attempt to obtain any information from them about mother's whereabouts. However, father testified his parents did not tell him of mother's visits to Carlsbad until several months after they occurred, and that in December 1987, he learned that his parents were led to believe mother would not let them see the child if they informed father of mother's visits to Carlsbad.

We believe, based on the testimony before it, that the trial court could reasonably find that father made reasonable efforts to locate the child. *See Trujillo v. Romero* (appellate court does not consider evidence unfavorable to the finding). *See Evans Prod. Co. v. O'Dell,* 96 N.M. 500, 632 P.2d 735 (1981) (on appeal appellate court indulges all reasonable inferences in support of the trial court's findings).

Mother also argues there is no evidence supporting the trial court's finding number 13 that she willfully, intentionally, and maliciously kept father from seeing the child by refusing to allow him to contact father and by her refusal to notify father of her address whenever she moved. This contention is without merit because the finding is supported by mother's own testimony that she did not "think to" notify father of her various moves, that she never encouraged the child to have any contact with father, and her visits to Carlsbad without notifying father. In addition, father's testimony that mother told him prior to her move to Texas in March 1978 that she did not want him to ever see the child again together with his testimony that he did not see the child for almost ten years also provides support for this finding. The trial court could reasonably find mother's actions were those of a mother trying to conceal her child from his father. *See Trujillo v. Romero* (appellate court does not consider evidence unfavorable to the finding where other evidence exists to support the finding). We have reviewed the other contentions mother makes under this point and find them to lack merit.

Mother claims the trial court's conclusion that she waived the child support arrearages is erroneous. *See Whitehurst v. Rainbo Baking Co.,* 70 N.M. 468, 374 P.2d 849 (1962) (conclusions of law are reviewable on appeal). We believe the issue is, under the facts as found by the trial court, whether

the trial court could conclude that mother waived her right to the child support arrearages. *See id.*

Mother characterizes this case as one where the trial court denied her petition for child support arrearages because she denied father visitation. She, in effect, argues denial of visitation is not a defense as a matter of law to her petition for child support arrearages. Father argues the trial court did not recognize denial of visitation as a defense to mother's petition for child support arrearages. Instead, father contends the court based its decision that mother waived her right to collect the child support arrearages on other factors. It is unclear from the trial court's findings and conclusions whether it recognized denial of visitation as a defense to the child support arrearages or whether it decided mother waived her right to collect child support arrearages for reasons other than her denial of visitation. For this reason, and because the duty to pay child support is so important in New Mexico, we address whether the trial court could have denied mother's petition under both theories. *See H.T. Coker Constr. Co. v. Whitfield Transp., Inc.* (appellate court will affirm trial court's decision if it reaches correct result for wrong reason).

*Whether Denial Of Visitation Constitutes A Defense To Collection Of Child Support Arrearages*

█ Although courts cannot retroactively modify a child support order, New Mexico recognizes that any valid defense may be raised in a proceeding for enforcement of a child support order. *See Mask v. Mask,* 95 N.M. 229, 620 P.2d 883 (1980). Mother relies on *Fullen v. Fullen,* 21 N.M. 212, 153 P. 294 (1915), and *Dillard v. Dillard,* 104 N.M. 763, 727 P.2d 71 (Ct.App. 1986), in support of her contention that denial of visitation is not a defense to the payment of child support arrearages. However, these cases are distinguishable because they primarily involved modifications of a noncustodial parent's ongoing or future support obligations to enforce visitation. *Compare Lindsey v. Lindsey,* 6 Haw.App. 201, 716 P.2d 496 (1986) (distin-

guishing between past due and not yet due support payments, court held rule that mother cannot agree with father to waive right to collect court ordered child support payments applies only to not yet due child support payments). *Accord Brannock v. Brannock,* 104 N.M. 385, 722 P.2d 636 (1986) (parties cannot agree to modify future support payments).

*Dillard* also recognized that courts are authorized to withhold child support to enforce visitation only in extreme circumstances. *See id.* at 768, 727 P.2d at 76. Moreover, the educational trust set up in *Dillard* by the trial court out of father's accumulated child support arrearages was struck down because it provided for support of the children past the age of majority, not because the court did not recognize denial of visitation as a defense to payment of child support arrearages. *See id.* at 766, 727 P.2d at 74. Mother also relies on *Brannock.* However, this case did not address the issue of whether denial of visitation is a defense to the payment of child support arrearages. Therefore, we have concluded this is an issue of first impression in New Mexico.

Our research from other jurisdictions that have addressed this issue reveals a split of authority. Some jurisdictions hold denial of visitation is a defense to the payment of child support arrearages. *See, e.g., Sharum v. Dodson,* 264 Ark. 57, 568 S.W.2d 503 (1978); *Lamagro v. Murray,* 107 Misc.2d 579, 435 N.Y.S.2d 501 (1980). Other jurisdictions hold it is not a defense. *See, e.g., Hagstrom v. Smith,* 148 Ga.App. 18, 251 S.E.2d 27 (1978); *Jacot v. Jacot,* 37 Or.App. 803, 588 P.2d 122 (1978). Some jurisdictions hold it is a defense in extreme cases where, for example, the custodial parent conceals his whereabouts. *See, e.g., Commonwealth ex rel. Zercher v. Bankert,* 266 Pa.Super. 595, 405 A.2d 1266 (1979); *Commonwealth ex rel. Chila v. Chila,* 226 Pa.Super. 336, 313 A.2d 339 (1973).

We believe the better approach is to follow the rule that denial of visitation is generally not a defense to collection of child support arrearages except in those

extreme cases where, for example, the non-custodial parent against whom the arrearages are sought to be enforced can prove the custodial parent concealed his whereabouts and the noncustodial parent made reasonable efforts to locate the custodial parent. *See Sharum v. Dodson* (father presented uncontradicted evidence that he thought mother had left the state and he did not know where she was); *Commonwealth ex rel. Chila v. Chila* (custodial parent concealed whereabouts). We also believe this is in accordance with New Mexico case law. *Compare Dillard v. Dillard* (courts are authorized to withhold support to enforce visitation only in extreme cases). However, we caution a noncustodial parent finding himself in this type of situation that the better practice would be for him to immediately move the trial court for a reduction in child support or some other appropriate relief rather than allowing the arrearages to accrue.

■ Since the trial court, in effect, found that mother concealed her whereabouts during the time in question and father made reasonable efforts to locate her, then we affirm the trial court's judgment on the basis that it could have concluded these circumstances constituted a defense to mother's petition to collect the child support arrearages that accrued during this time. *Compare Dillard v. Dillard; Sharum v. Dodson. See H.T. Coker Constr. Co. v. Whitfield Transp., Inc.* (we will affirm trial court's decision if it is right for any reason).

*Waiver*

■ Relying on *Brannock*, mother argues the trial court erroneously concluded she waived her right to collect the child support arrearages because of an absence of an agreement between the parties supported by consideration. She argues there can be no such thing as a "continuing" or "ongoing" waiver. She claims one must be able to point to a certain moment in time when the parties agreed that child support arrearages accrued up to the time of the agreement would be waived. She argues that one must then be able to demonstrate

the agreement was supported by sufficient consideration and it does not infringe on the rights of third parties or is not against public policy. Mother argues only under these circumstances can a finding of waiver be made.

Father argues mother's interpretation of *Brannock* completely rewrites the definition of waiver in New Mexico. Father argues *Brannock* discussed two types of waiver. He argues that under *Brannock* waiver can arise from mutual agreement of the parties, which requires consideration, or from acts or conduct inconsistent with claiming a legal right, which does not require consideration. He claims *Brannock* is distinguishable from this case on its facts because it involved a mutual agreement between the parties for modification of child support arrearages already accrued supported by adequate consideration while this case involves a waiver arising from mother's intentional acts and conduct inconsistent with claiming her right to collect the child support arrearages. Although it is unclear from his brief, father also seems to argue parties can agree to waive future child support payments.

We do not completely agree with either parties' interpretation of *Brannock*. The trial court in *Brannock* decided mother waived her right to child support arrearages based on an agreement between the parties that mother would waive her right to the child support arrearages already accrued if father would begin to pay regular child support payments in a lesser amount than originally ordered. The trial court also modified father's future child support obligation based on this agreement. On appeal from this court, our supreme court, distinguishing between ongoing or future support obligations and child support arrearages already accrued and noting mother did not attack the trial court's finding that the agreement was supported by sufficient consideration, affirmed the trial court and held a valid waiver of child support arrearages can be made by the person who provided the children with support, but only where there is evidence of consideration for such waiver and where such waiver does not infringe on the rights of others.

With respect to the trial court's modification of father's future support obligation based on the parties' agreement, the supreme court, noting that parties cannot agree to waive future child support obligations, affirmed because mother never claimed error in this ruling.

We disagree with mother's interpretation of *Brannock* to the extent she suggests a valid waiver of child support arrearages can only occur where there is a mutual agreement between the parties supported by adequate consideration which does not infringe on the rights of others. We agree with father's interpretation of *Brannock* that waiver can also occur from acts and conduct inconsistent with claiming the legal right because the *Brannock* court acknowledged both before differentiating between voluntary surrender or relinquishment of a legal right and intentional action inconsistent with claiming a legal right.

Therefore, our interpretation of *Brannock* is that an agreement to waive child support arrearages already accrued constitutes a valid waiver to collect these arrearages as long as the agreement is supported by sufficient consideration and does not infringe on the rights of others. *See also Brown v. Jimerson*, 95 N.M. 191, 619 P.2d 1235 (1980) (waiver of contract right requires consideration or a written instrument). However, waiver of child support arrearages or the right to ongoing support can also arise from intentional conduct or acts inconsistent with claiming the legal right. *See Brannock v. Brannock.* No consideration is required to support this type of waiver. *See id. Compare Malekos v. Chloe Ann Yin*, 655 P.2d 728 (Alaska 1982) (observance of contract principles seems unnecessary and undesirable when waiver at issue concerns the obligation to pay future child support payments because consideration can always be inferred by noncustodial parent's failure to pursue opportunity to obtain judicial modification of the support obligation). However, parties cannot agree to waive future child support obligations because this is a matter to be determined by the courts. *See Brannock v. Brannock. Accord Lindsey v. Lindsey.*

Under our interpretation of *Brannock*, the issue in this case is whether there was an existing right, a knowledge of its existence, and such conduct by mother as to warrant an inference of the relinquishment by her of her right to collect the child support payments during the time in question. It is undisputed that the first two elements exist—mother had knowledge of an existing right to collect the child support payments each month as they became due. The question is whether the trial court could find mother waived her right to collect these child support payments by her acts or conduct. *See Brannock v. Brannock.*

We hold the trial court could properly conclude that mother waived her right to collect the child support payments during the time in question, based on its finding that in 1978 mother told father she did not want his money or for him to ever see the child again, and its finding that mother never asked father for child support during the time in question. *See Cordova v. Lucero*, 129 Ariz. 184, 629 P.2d 1020 (Ct.App. 1981) (mother waived claim for disputed child support arrearages by writing letter to father advising him she did not want his support and that she was going to have her husband adopt the children); *Kaminski v. Kaminski*, 8 Cal.App.3d 563, 87 Cal.Rptr. 453 (1970) (same except mother orally told father she did not want his support and mother denied father visitation rights); *Malekos v. Chloe Ann Yin* (trial court erroneously ordered father to pay child support arrearages during period of time waiver was in effect where mother told father she wanted nothing to do with him and did not want child support and mother had numerous contacts with father's family during which time she never expressed an interest in collecting child support from father).

Mother argues the fact she filed her URESA petition in 1978 for child support arrearages, after her conversation with father indicates she did not intend to waive her right to collect the child support payments. *See id.* (although custodial parent may waive ongoing or future child support

**100**

payments, custodial parent may retract the waiver at any time to enforce the support obligation for the period of time after the custodial parent withdraws the waiver).

Under the particular facts of this case, we reject this argument. Father suggests the reason mother filed her URESA petition while she lived in Texas is that mother could deny father visitation while at the same time collect child support from him because the trial court had no jurisdiction to enforce father's visitation rights in the URESA proceeding. We believe this would be a reasonable inference for the trial court to make from the evidence presented and its other findings.

In its October 1978 order in mother's URESA proceeding, the trial court found father had deposited $600 in a savings account in Carlsbad, New Mexico, which represented child support arrearages that had accrued through the date of the hearing on mother's URESA petition. The trial court ordered father to turn these funds over to mother when he picked up the parties' child for a thirty-day visitation. Father testified this visitation never occurred because mother never notified him of her address in order for him to pick up the child for a thirty-day visitation, and that he subsequently withdrew the funds in the savings account approximately two years later. Mother waited almost ten years before attempting to collect the child support arrearages from father in this proceeding. Although mother arguably retracted her waiver when she filed her URESA petition in 1978, *see id.*, she never collected the funds in the savings account. So, under this view of the facts, mother's filing of the URESA petition was not necessarily inconsistent with her statement to father that she did not want his money or for him to ever see the child again. Therefore, the trial court could conclude mother still intended to waive her right to ongoing or future child support payments despite the fact she filed the URESA petition.

We also believe it relevant that *both* parties testified their understanding of the terms of the October 1978 order resulting from mother's URESA proceeding was that

father was not obligated to pay any child support until mother allowed him a thirty-day continuous visit with the child. Since mother refused to allow the visitation, the trial court could conclude she intended to waive her right to the child support payments accruing during this time. *Compare Kaminski v. Kaminski.*

Based on the foregoing, we affirm the trial court's judgment.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.