862 P.2d 442

**Paul D. CRESPIN, Claimant–Appellee,**

v.

**CONSOLIDATED CONSTRUCTORS, INC., Employer, and Mountain States Mutual Casualty Company, Insurer, Respondents–Appellants.**

**No. 13726.**

Court of Appeals of New Mexico.

Sept. 2, 1993.

Certiorari Denied Oct. 26, 1993.

Benito Sanchez, Benito Sanchez, P.A., Albuquerque, for claimant-appellee.

Daniel E. Gershon, Compton, Coryell, Hickey & Ives, P.A., Santa Fe, for respondents-appellants.

## OPINION

FLORES, Judge.

Consolidated Constructors, Inc., and Mountain States Mutual Casualty Company (collectively referred to as Respondents) appeal from an order entered by the work-

ers' compensation judge (judge) awarding compensation benefits to Paul Crespin (Claimant).

Respondents raise two issues on appeal: (1) whether, as a matter of law, the judge's amended findings of fact numbers 25 and 26 required reduction or suspension of Claimant's compensation for refusal to submit to medical treatment as reasonably essential to promote his recovery; and (2) whether the judge erred in refusing to limit benefits to 100 weeks under NMSA 1978, Section 52–1–42 (Repl.Pamp.1987). With regard to the first issue, we hold that the judge was not required to reduce or suspend Claimant's benefits since incapacitating pain would justify Claimant's refusal to submit to the recommended exercise regimen. As to the second issue, because there was evidence of a disability produced by continuing physical impairment, compensation benefits were not limited to 100 weeks. We affirm.

### BACKGROUND

Since Claimant's injury on February 22, 1989, Respondents have paid to Claimant total disability payments for 100 weeks. On February 19, 1991, Claimant filed a claim alleging he was entitled to continuing total or partial disability benefits. On May 28, 1991, Respondents filed their answer and affirmative defenses alleging, in relevant part, that: (1) Claimant refused to participate in his physical rehabilitation, and thus, pursuant to NMSA 1978, § 52–1–51(C) (Repl.Pamp.1987), the judge should have suspended or reduced any compensation benefits that Claimant may have been entitled to receive; and (2) if compensable at all, Claimant's alleged injury constituted a secondary mental impairment and was therefore an injury for which benefits did not run longer than 100 weeks pursuant to Section 52–1–42.

On September 27, 1991, the judge heard Claimant's claim. As shown by the Supplemental Findings and Compensation Order, filed on January 21, 1992, the judge decided that Claimant was totally disabled and that after six months of psychological therapy Claimant would be 25% permanently disabled. Respondents appeal from this order.

### FACTS

Claimant was employed by Respondent Consolidated Constructors, Inc., as a heavy-equipment operator. On February 22, 1989, Claimant was injured on the job when a front-end loader which he was operating rolled over on its side. As a result of the accident Claimant suffered a cervical and thoracolumbar strain. On March 6, 1989, Dr. Lopez referred Claimant to physical therapy. Claimant was compliant with his physical therapy until approximately July 1989. However, there is evidence that by the end of 1989, Claimant was missing physical therapy appointments, was self-terminating exercise programs, was poorly motivated, and generally was not giving maximum effort in his physical therapy. Claimant was also being noncompliant with his home exercise program which had been prescribed by Dr. Lopez. On August 9, 1989, Claimant was referred to Dr. Feldman, a neurosurgeon. On October 4, 1989, Dr. Lopez discontinued physical therapy since it had not led to any improvement. Dr. Lopez continued treating Claimant and later referred him to Dr. Martinez, another neurosurgeon. Claimant was complaining of pain. By January 31, 1990, besides the cervical and thoracolumbar strain, Claimant had developed fibromyalgia syndrome, described as a type of chronic pain syndrome often associated with depression. Claimant thereafter was referred to a psychologist. Claimant was also referred to the Margaret Strong Pain Clinic and later to St. Vincent's Hospital Pain Management Center for psychological counseling and pain management therapy. Again, he showed little positive motivation to improve his condition. Dr. Lopez advised Claimant to continue his conditioning or rehabilitative program; however, Claimant did not think that the physical therapy was helping him, and it caused him a lot of pain; thus, he was essentially noncompliant. By February 28, 1990, Dr. Lopez diagnosed Claimant as suffering from somatization, a condition in which patients suffering from depression exhibit physical complaints as manifestation of their depression. Dr. Lo-

pez saw Claimant for the last time on June 26, 1991. His assessment of Claimant at that time was fibromyalgia syndrome, depression with somatization, and cervical and lumbar strain.

Two clinical psychologists evaluated and treated Claimant. Dr. Weisz found Claimant had a highly entrenched chronic pain syndrome with significant levels of depression and a high somatic focus. Dr. Lang also found chronic pain syndrome and depression.

*DISCUSSION*

1. *Whether, as a matter of law, the judge's amended findings of fact required reduction or suspension of Claimant's compensation for refusal to submit to medical treatment as reasonably essential to promote his recovery.*

Respondents' position regarding this issue is that, as a matter of law, the judge's Amended Findings of Fact numbers 25 and 26 constitute a determination of refusal by Claimant to submit to such medical or surgical treatment as was reasonably essential to promote his recovery, such that the judge should have reduced or suspended Claimant's compensation pursuant to Section 52–1–51(C). We do not agree with Respondents' position.

As shown in his Amended Findings of Fact, the judge found:

25. As part of Claimant's physical rehabilitation, Dr. G. Michael Lopez prescribed physical therapy through Northeastern Regional Physical Therapy. The purpose of physical therapy was to increase Claimant's function, increase endurance, increase general body conditioning and thereby facilitate an earlier recovery and bring about an earlier return to work.

26. Claimant's efforts at physical therapy were marked by frequently missed appointments, self-termination of exercise programs despite physical therapist instructions to the contrary, poor motivation, poor attitude, poor compliance with his

physical therapy and home exercise program, submaximal effort, refusal to increase exercise times, and general non-compliance with his physical rehabilitation program.

Section 52–1–51(C) provides: "If any worker ... refuses to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, the hearing officer may in his discretion reduce or suspend the workers' compensation benefits." "[T]he question of whether refusal to submit to medical treatment should result in a reduction or suspension of compensation turns on a determination of whether the refusal is reasonable." *Brooks v. Hobbs Mun. Sch.*, 101 N.M. 707, 710, 688 P.2d 25, 28 (Ct.App.1984). In order to determine whether a worker has acted reasonably in refusing medical or surgical treatment, the court will balance the benefits against the risks. Specifically, it will weigh the probability that the treatment will reduce the worker's disability against the probable risks associated with the treatment. *Id.* at 711, 688 P.2d at 29. This is a question of fact.

In reviewing this issue, we apply the whole record review standard in order to determine if there is substantial evidence to support the judge's order. In doing so, we will not reweigh the evidence. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988).

Here, the refused treatment involved physical therapy. In this regard, Respondents argue that Claimant has failed to show any risks associated with physical therapy while Respondents have clearly shown that Claimant's failure to comply with physical therapy delayed Claimant's successful rehabilitation and his return to work. Respondents, in support of their argument, quote from 1 Arthur Larson, *The Law of Workmen's Compensation* § 13.22(d) (1993) (footnotes omitted), as follows: "When the treatment prescribed takes the form of exercise ... obviously there is no element of risk, and unreasonable refusal to follow medical in-

structions will lead to a loss of benefits for any disability attributable to this refusal."

Respondents contend that Claimant's failure to show up, on numerous occasions, for his physical therapy sessions plus his failure to fully participate in his prescribed treatment, clearly establish that Claimant unreasonably refused medical treatment. Respondents further contend that the medical evidence shows that the medical treatment was reasonably essential to promote Claimant's recovery and that Claimant's poor compliance with his physical therapy delayed his successful rehabilitation.

Claimant basically argues, citing *Rhodes v. Cottle Construction Co.*, 68 N.M. 18, 357 P.2d 672 (1960), that Respondents failed to request, and the judge did not make, a finding that Claimant's refusal to fully participate in physical therapy rehabilitation amounted to a refusal to submit to medical treatment as was reasonably essential to promote his recovery. We determine that Respondents did request appropriate and sufficient findings of fact and conclusions of law as to whether Claimant refused to submit to such medical treatment as was reasonably essential to promote his recovery. However, we disagree with Respondents that the judge's findings numbers 25 and 26 amount to a finding that Claimant violated Section 52–1–51(C).

On appeal, findings are construed to uphold a judgment rather than to reverse it. *Newcum v. Lawson*, 101 N.M. 448, 455, 684 P.2d 534, 541 (Ct.App.1984). By refusing Respondents' requested findings numbers 35 through 39, the judge essentially denied Respondents' arguments on this issue. *See H.T. Coker Constr. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 804, 518 P.2d 782, 784 (Ct.App.1974) (where a party has the burden of proof on an issue and the party's requested findings on the issue are refused, the refusal is effectively a finding against the party).

Claimant contends that the judge decided either (1) that there was no refusal to submit to medical treatment as was reasonably essential to promote his recovery or (2) that his conduct and refusal were reasonable because of incapacitating pain. There is ample evidence in the record supporting Claimant's argument that incapacitating pain prevented him from fully participating in physical therapy. The record shows that in her deposition Ms. Nimfa Trias, the director of Northeastern Regional Center's physical therapy department, testified as follows when questioned by Respondents' attorney:

Q. Now, on October 2, 1989, you note, "Patient had refused to increase speed of treadmill beyond one mile an hour due to increase of pain." Does successful physical rehabilitation sometimes necessitate a patient working through the pain?

. . . .

A. We advise our patient to work to the point of pain. I'm not one of those therapists who believe in no pain, no gain. The reason for that is the more you do, sometimes the muscle reacts in such a way that they go into spasms more. Then the patient goes into pain more and they refuse to do more. So we advise them to go—to a point where it is painful and stay there.

Ms. Trias also testified that the goal of the physical therapy department was not to increase Claimant's pain threshold but rather to decrease his pain through the use of pain-relieving modalities such as moisture, heat, and ultrasound treatments. Additionally, Ms. Trias stated that the physical therapy department sets performance levels for their patients, which levels they increase gradually. However, if the patient complains of pain, the therapist either backs off or remains on the same level. She further testified that Claimant's pain level increased over the length of his therapy, approximately from March 1989 to August 1990, and his range of motion decreased in certain areas. Additionally, Claimant was poorly motivated to increase his activities during therapy due to his pain.

There was also medical testimony from Dr. William K. Jones, an orthopedic surgeon, that tests revealed that Claimant did not display a tendency to be overly pain-

focused or to magnify his symptoms. Further, Dr. Jones stated that the tests demonstrated Claimant's "genuine desire and his relative lack of overreaction to certain maneuvers and that he is not doing anything ... consciously to demonstrate this incapacitating pain."

On examination by Respondents' attorney of Dr. Jones about whether Claimant's lack of motivation was a cause for pain management not being successful, Dr. Jones stated "Yeah. I must say in this case, though, I would then want to review what is the reason for his lack of motivation, and it could very well not be his own doing. Could be a result of his lack of understanding and faith in his treatment."

Dr. Lopez, an internist, testified that Claimant had been compliant with his work conditioning program, but Claimant felt it was not benefitting him in terms of pain and that Claimant was constantly dwelling on pain and talking about it. Further, Dr. Lopez testified that he had discussed with Claimant his poor motivation and his frequent missing of physical therapy. He further testified that Claimant's reasons were that he felt therapy was not helping him enough or that he could not fully participate in the physical therapy because of pain.

On examination by Respondents' attorney, Dr. Lopez testified that his secondary diagnosis was that Claimant's poor compliance with his treatment program was contributing to his disability at that point. However, Dr. Lopez further testified that he did not feel that Claimant was ever malingering with regard to his pain.

Thus, there was evidence that Claimant was unable to fully participate in physical therapy because of incapacitating pain that was not of his own making, and there was evidence that it is reasonable for patients not to fully participate in physical therapy under these circumstances. Therefore, from a review of the record as a whole, we determine there was sufficient evidence to uphold the judge's decision not to reduce or suspend Claimant's compensation pursuant to Section 52–1–51(C).

2. *Whether the judge erred in refusing to limit benefits to 100 weeks.*

■ In their docketing statement, Respondents contend that Claimant's benefits were stopped after 100 weeks because there was no medical testimony showing that Claimant's injuries included physical injuries. Section 52–1–42(2) provides that for partial disability, a worker's benefits shall not exceed 500 weeks except for "secondary mental impairment in which case the maximum period is the maximum period allowable for the disability produced by the physical impairment or one hundred weeks, whichever is greater." The parties stipulated that Claimant had a secondary mental impairment.

In this regard, this Court instructed the parties to brief the issue of whether chronic pain syndrome is a physical impairment, a mental impairment, or a combination of both. Respondents take the position that chronic pain syndrome is a mental impairment since it is based on mental infirmities rather than organic physical causes. Specifically, they contend that the medical evidence shows that Claimant's continuing disability is based upon Claimant's mental impairment or psychological condition which is secondary to the past physical condition, namely, the muscle strain he suffered in February 1989, which has since healed, and not upon any continuing organic physical impairment or condition. We need not decide the issue we directed the parties to brief because we find that there was substantial evidence on the record as a whole that Claimant still suffered from a physical impairment which produced his disability.

Respondents challenge, as being unsupported by substantial evidence on a review of the record as a whole, the judge's Finding of Fact number 6 and Conclusion of Law number 4 to the effect that "Claimant is at the present time totally disabled as a result of his combined mental and physical condition, [and] in six months after therapy he will be 25% permanently disabled." Further, Respondents contend that the judge essentially adopted their position as shown by his Finding of Fact number 20:

20. Subsequent to the date of the industrial accident, Claimant has been able to work at least at a medium physical demand level on a full-time basis, with a lifting restriction of 30 pounds, avoidance of repeated bending, and avoidance of any activities that require repeated trunk twisting. *The restrictions are based solely upon Claimant's subjective complaints of pain (which is a function of a somatoform pain disorder or secondary mental impairment) rather than upon any physical findings.* (Emphasis added.)

■ We do not agree with Respondents' further contention. It is the duty of this Court, as a reviewing court, to harmonize the findings of fact and conclusions of law, whenever possible, in order to ascertain the real intent of the court below. *Sheraden v. Black,* 107 N.M. 76, 80, 752 P.2d 791, 795 (Ct.App.1988). Also, "[i]n the case of uncertain, doubtful or ambiguous findings, an appellate court is bound to indulge every presumption to sustain the judgment." *Ledbetter v. Webb,* 103 N.M. 597, 602, 711 P.2d 874, 879 (1985).

We believe that substantial evidence, on the record as a whole, supports the judge's determination that Claimant's present disability is a result of both physical and mental impairment and that the applicable statute does not cap benefits in this situation. Dr. Lopez was Claimant's treating physician, and Claimant saw him numerous times between the date of the accident and the date of the proceedings below. In each one of Dr. Lopez's progress notes, Dr. Lopez included cervical and thoracic or thoracolumbar strain as part of the diagnosis. Although the strain began as the primary diagnosis and was, over time, replaced by the psychological problems as the primary diagnosis, we deem it important that it always remained in the diagnosis. Thus, Respondents' argument that Claimant's initial physical injury had totally resolved itself is not supported by the medical evidence. Additionally, we note that even Respondents' expert, Dr. Jones, gave Claimant an impairment rating based in part on a positive x-ray finding.

■ We do not believe that it was essential for Claimant to establish by direct evidence in the form of expert medical testimony that his current disability was causally connected to an ongoing physical impairment. First, the expert medical testimony rule applies only to the causal connection between the disability and the accident. *Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 70, 716 P.2d 645, 648 (Ct.App.1986). Second, because Claimant's pain syndrome arose out of his physical injury, the judge could infer that Claimant's current disability was produced by the continuing physical impairment that Dr. Lopez's notes indicated was present.

Nor do we believe that Section 52–1–42(2) was intended to apply in this situation. We recently had occasion to construe NMSA 1978, Section 52–1–41(A)(2) (Repl. Pamp.1987) in *Fitzgerald v. Open Hands,* 115 N.M. 210, 848 P.2d 1137 (Ct.App.1993). In that case, we held that the 100–week cap applied because the claimant there no longer had any disability caused by physical impairment because she no longer had a physical impairment. *Id.* at 214, 848 P.2d at 1141. That case, therefore, does not control this case in which Claimant still has a physical impairment which is still causing a disability, albeit through the intermediary of a secondary mental impairment.

In this connection, it is important to note that the continuing existence of a physical impairment which continues to produce disability is the key to our decision. Our decision should not be read to mean that a physical impairment that has resolved, but which originally caused a continuing secondary mental impairment, would qualify for requiring benefits to be paid beyond the 100–week cap. That is the question that we asked the parties to brief but which, in light of the presence of a continuing physical impairment causing disability, we need not decide. Thus, we believe that our opinion is consistent with the legislative intent to restrict coverage for mental injuries discussed in *Fitzgerald* and the cases cited therein. *Id.* at 213, 848 P.2d at 1140.

There was substantial evidence on the record as a whole that supported the judge's finding and conclusion that Claimant's disability was a result of a combined physical and mental condition. Under these circumstances, Section 52–1–42(2) does not apply.

*CONCLUSION*

Based on the foregoing, we affirm. Pursuant to Claimant's request, we award attorney's fees on appeal to Claimant in the amount of $1925. *See* NMSA 1978, § 52–1–54(G) (Repl.Pamp.1987).

**IT IS SO ORDERED.**

PICKARD, J., concurs.

BIVINS, J., dissents.

BIVINS, Judge (dissenting).

Because I am unable to agree with the majority's holding on the second issue, I respectfully dissent. I have no disagreement regarding the discussion and disposition on the first issue. Under my analysis of the second issue, I would reverse and direct the workers' compensation judge (judge) to reinstate his earlier decision limiting Claimant to 100 weeks of disability.

Based on the judge's findings of fact and a review of the evidence, we are presented with the following circumstances. Claimant suffered an accidental injury in the course and the scope of his employment on February 22, 1989. As a result, he initially suffered a cervical and thoracolumbar strain. This physical injury resolved itself by October 1990. Claimant also developed a mental condition as a result of the physical injury.

Claimant was diagnosed as suffering from fibromyalgia syndrome, which is a form of chronic pain syndrome. The judge found, as well as concluded, that Claimant at the time was totally disabled "as a result of his combined mental and physical condition" and that in six months after therapy he would be 25% permanently disabled. Respondents received credit for 100 weeks of disability payments at the maximum rate. There appears to be no disagreement that, at the time of the hearing, Claimant continued to have an impairment resulting from his physical injury and a disability resulting from his secondary mental impairment. By combining the two, the judge extended compensation benefits beyond that allowed by statute.

Because Finding of Fact No. 20 is critical to the analysis, I set it out in full.

Subsequent to the date of the industrial accident, Claimant has been able to work at least at a medium physical demand level on a full-time basis, with a lifting restriction of 30 pounds, avoidance of repeated bending, and avoidance of any activities that require repeated trunk twisting. *The restrictions are based solely upon Claimant's subjective complaints of pain (which is a function of a somatoform pain disorder or secondary mental impairment) rather than upon any physical findings.* (Emphasis added.)

NMSA 1978, Section 52–1–42 (Repl. Pamp.1987), provides in pertinent part:

The duration of *partial disability* benefits shall in no event be longer than five hundred weeks except for *partial disability* resulting from:

. . . .

(2) secondary mental impairment in which case the maximum period is the maximum period allowable for the *disability produced by the physical impairment* or one hundred weeks, whichever is greater. (Emphasis added.)

The language of this statute is plain and unambiguous. *See Southern Union Gas Co. v. New Mexico Pub. Serv. Comm'n,* 82 N.M. 405, 407, 482 P.2d 913, 915 (1971) (where statute's terms plain and unambiguous, construction not allowed), *overruled on other grounds by De Vargas Savs. & Loan Ass'n v. Campbell,* 87 N.M. 469, 473, 535 P.2d 1320, 1324 (1975). The duration of partial disability benefits shall not exceed 500 weeks, unless Claimant has a partial disability resulting from a secondary mental impairment. In such a case, the maximum period is the greater of either the maximum period allowable "for the *disability* produced by the physical impair-

ment" or 100 weeks. Thus, unless Claimant has a partial *disability* resulting from a physical impairment, he is limited to 100 weeks for his partial disability resulting from secondary mental impairment.

Under Finding of Fact No. 20, the judge found that Claimant had been able to work with certain restrictions on his activities. Those restrictions, according to the judge's finding, were based solely on Claimant's subjective complaints of pain rather than upon any physical findings. The majority circumvents this finding by melding the physical impairment with the partial disability resulting from the secondary mental impairment. I believe that this is incorrect and not only violates the plain language of the statute, but also defeats the legislative purpose.

Section 52–1–42 speaks in terms of disability, not impairment. Claimant here does not have a disability resulting from his physical injury, he only has a continuing impairment. An impairment is not compensable unless it results in a disability. *See* NMSA 1978, § 52–1–26 (Repl. Pamp.1987) (partial disability); *Cardenas v. United Nuclear Homestake Partners,* 97 N.M. 46, 49, 636 P.2d 317, 320 (Ct.App. 1981) (to be entitled to benefits, worker must not only suffer physical impairment, but also must be unable to work); *Pacheco v. Springer Corp.,* 83 N.M. 622, 623, 495 P.2d 800, 801 (Ct.App.1972) ("To entitle an injured workman to compensation, impairment is not enough; there must be disability."). Claimant did have a secondary mental impairment resulting in a disability— total at the time of the hearing and 25% after six months of therapy. Since, under Finding No. 20, his disability was attributable solely to the secondary mental impairment and since there is no disability attributable to the physical impairment, Claimant is restricted to 100 weeks of compensation benefits.

While it is correct that Claimant may have been totally disabled as a result of "his combined mental and physical condition," a fair reading of the judge's entire decision makes clear that the determination of disability results from the mental condi-

tion, not the physical one. Combining the two, without requiring that an identifiable disability specifically result from the physical injury, ignores the plain meaning of the statute and produces an anomalous result. It cannot be seriously argued that the physical condition produced a disability; substantial evidence would not support such a finding. The majority's reliance on Dr. Lopez's notes ignores the doctor's deposition testimony indicating that Claimant's disability was not causally connected to his physical impairment. Dr. Jones's testimony also clearly indicates that Claimant's mental condition, not his physical condition, was the cause of his disability. I also find unpersuasive the majority's attempt to buttress its substantial-evidence analysis. First, this case does not implicate the expert medical testimony rule. Rather, Claimant simply failed to establish that his disability continued to be causally connected to his physical condition. Second, the inference "that the Claimant's current disability was produced by the continuing physical impairment" simply cannot be strengthened by the fact that "Claimant's pain syndrome arose out of his physical injury." To allow this sort of bolstering would also be to allow complete circumvention of the purpose of Section 52–1–42 because, as discussed below, secondary mental impairments (here, pain syndrome) *always* arise from physical impairments (here, a back injury).

Additionally, Claimant does not appear to disagree. He argues for continuation of benefits beyond the 100 weeks based on physical impairment alone. This is not the test.

By definition, " 'secondary mental impairment' means a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment." NMSA 1978, § 52–1–24 (Repl.Pamp.1987). Thus, a secondary mental impairment, when present, always arises from a physical impairment. However, in order to be compensable, the secondary mental impairment must result in a disability. *See* § 52–1–42. The limit on that disability is 100 weeks. *See id.* To

allow benefits to continue beyond the 100 weeks by grafting partial disability resulting solely from a secondary mental impairment onto a physical impairment which produces no disability virtually eliminates the 100-week limitation.

Here, we do not have a physical disability, only a noncompensable impairment resulting from a physical injury. That being the case, Claimant is limited to the 100 weeks of benefits for the disability resulting from the secondary mental impairment. To hold otherwise renders the statute meaningless in many situations because secondary mental impairments *always* arise from physical impairments and can continue to be associated with physical impairments even after the physical impairments cease to be disabling (as demonstrated in this case).

It seems clear that the legislature, in enacting Section 52–1–42 and other relevant provisions, was attempting to place a time limitation on disabilities resulting from mental conditions. In effect, it was restricting the previous compensability of such injuries. *See, e.g., Candelaria v. General Elec. Co.*, 105 N.M. 167, 730 P.2d 470 (Ct.App.) (psychological disability caused by stress arising out of and in course of employment held compensable), *cert. quashed,* 105 N.M. 111, 729 P.2d 1365 (1986). By allowing a physical impairment to carry a disability resulting from a secondary mental impairment beyond the 100–week limitation, the majority, in my view, denies the legislature its prerogative to fix limitations.

Recently, this Court had an opportunity to examine NMSA 1978, Section 52–1–41(A) (Repl.Pamp.1987), which deals with total disability, and it is almost identical to Section 52–1–42, which deals with partial disability. In *Fitzgerald v. Open Hands,* 115 N.M. 210, 848 P.2d 1137 (Ct.App.1993), we reversed a finding by the workers' compensation judge that the worker was totally and permanently disabled solely from her secondary mental impairment. In that case, the worker's physical disability ended on March 15, 1991, so that at the time of the hearing the worker's disability was solely attributable to the secondary mental impairment. We adopted the employer's position that "Section 52–1–41(A)(2) allows compensation payments for as long as the physical disability is present; if the physical disability lasts less than 100 weeks, then a person who is totally disabled by secondary mental impairment can receive compensation payments for the balance of the 100 weeks and no more." *Id.* at 213, 848 P.2d at 1140. We should apply an extension of that reasoning here. *Fitzgerald* teaches that in cases of this nature, the workers' compensation judges must first determine the maximum period allowable for a worker's disability produced by the physical impairment. Once that is done, *Fitzgerald* suggests that if that period is less than 100 weeks and the worker has a disability resulting from a secondary mental impairment which outlasts the physical disability, then he or she should receive compensation benefits for the duration of the mental disability, up to 100 weeks. By logical extension, only if the worker has a disability resulting from a physical impairment which lasts beyond 100 weeks should benefits continue for more than 100 weeks and for as long as the physical disability continues.

In *Fitzgerald,* not only did the worker have no disability resulting from a physical impairment, she no longer had a physical impairment. The majority opinion in the present case allows for the continuation of partial disability benefits as long as there is a physical impairment. One must conclude that this case will be read as distinguishable because Claimant here does have an ongoing physical impairment. I would agree with this distinction if Section 52–1–42 spoke in terms of impairment. It does not; it requires disability. *See State v. Herrera,* 86 N.M. 224, 522 P.2d 76 (1974) (courts must not construe statutes to achieve absurd results or to defeat intended legislative objectives).

Physical impairment gives birth to secondary mental impairment; mere physical impairment does not, however, carry compensation benefits for a disability resulting solely from that mental condition beyond

100 weeks. Only a physical *disability* can exceed the 100 weeks. The majority holding otherwise, I dissent.