913 P.2d 680

Susan M. UDERO, Worker–Appellee,

v.

**PHELPS DODGE MINING COMPANY,**
Self–Insured, Employer–Appellant.

No. 16201.

Court of Appeals of New Mexico.

Feb. 14, 1996.

Paul Maestas, Wayne R. Suggett, Silva, Rieder & Maestas, P.C., Albuquerque, for Appellant.

Mark E. Komer, The Roehl Law Firm, P.C., Albuquerque, for Appellee.

## OPINION

FLORES, Judge.

1. Phelps Dodge Mining Company (Employer) appeals the workers' compensation judge's (judge) order denying its motion for summary judgment and order granting summary judgment in favor of Susan Udero (Worker). On appeal, Employer argues that NMSA 1978, Section 52–1–41(B) (Repl. Pamp.1991) (effective Jan. 1, 1991) of the Workers' Compensation Act (the Act), forbids payment of temporary total disability benefits for a secondary mental impairment after the worker has received one hundred weeks of total disability benefits (regardless of what impairment was the source of the benefits received). Alternatively, Employer argues for the first time on appeal that even if there is no absolute one-hundred-week cap on temporary total disability benefits for secondary mental impairment, Worker can recover such benefits for a secondary mental impairment beyond one hundred weeks only for as long as the worker's physical disability continues. In this regard, Employer contends that remand is necessary for a determination of whether Worker's inability to

return to work is due to her physical condition. This case essentially requires us to interpret Section 52–1–41(B) of the Act. After doing so, we affirm the judge's orders.

*BACKGROUND*

2. On August 30, 1991, Worker suffered an accidental injury arising out of and in the course of her employment with Employer. As a result of the accident, Worker suffered multiple physical and psychological injuries. Worker received temporary total disability benefits in the amount of $297.19 per week from August 30, 1991 through June 24, 1994. Thereafter, from June 24, 1994 to September 24, 1994, Worker received permanent partial disability benefits based on an 18% rating, and from September 24, 1994 to the time that the judge adopted the parties' amended stipulations of fact on January 25, 1995, Worker received permanent partial disability benefits based on a 22% rating.

3. On July 25, 1994, Worker filed a complaint seeking temporary total disability benefits and permanent partial disability benefits from Employer. The judge entered Stipulations of Fact and Recital of Contested Issues on December 12, 1994, and Amended Stipulations of Fact and Recital of Contested Issues on January 25, 1995. According to the facts stipulated to by the parties, Worker reached maximum medical improvement for her physical injuries and was assessed a 10% permanent impairment of her body as a whole on May 4, 1994. After the modifications were factored in pursuant to NMSA 1978, Sections 52–1–26.1 to –26.4 (Repl. Pamp.1991) (effective Jan. 1, 1991), she was assigned a 22% disability. Worker, however, had not reached maximum medical improvement for the psychological injuries.

4. On December 16, 1994, Employer filed a motion for summary judgment arguing that Worker was not entitled to any further temporary total disability benefits despite her secondary mental impairment because she had already received temporary total disability benefits for one hundred weeks and under Section 52–1–41(B), Worker was barred from any claim for further disability benefits based on the mental impairment. Worker filed an answer to Employer's motion for summary judgment together with a cross-motion for summary judgment. On February 8, 1995, the judge denied Employer's motion for summary judgment, granted Worker's cross-motion for summary judgment, and ordered that Worker's temporary total disability benefits be reinstated beginning June 24, 1994. The judge determined that because "Worker suffered a secondary mental impairment as a result of a work accident, the psychological impairment has not yet reached maximum medical improvement, and the Worker has not yet been released to return to work," Worker is entitled to temporary total disability benefits under the Act. Employer appeals.

*DISCUSSION*

**I. Preservation**

5. ■ Initially, we must decide whether we may address the alternative argument Employer raises for the first time on appeal. Employer admits that it failed to preserve the alternative argument. However, Employer asserts that under this Court's previous holdings in *Perea v. Snyder,* 117 N.M. 774, 780, 877 P.2d 580, 586 (Ct.App.), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994); *Ramer v. Place–Gallegos,* 118 N.M. 363, 365, 881 P.2d 723, 725 (Ct.App.1994); and *Phifer v. Herbert,* 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App.1993), we can address the argument on appeal.

6. In *Phifer,* we acknowledged that, ordinarily, a party may not raise an argument on appeal that was not presented to the trial court but determined that "a different rule applies when the party opposing summary judgment seeks to call the appellate court's attention to facts in the record not specifically brought to the trial court's attention." *Phifer,* 115 N.M. at 138, 848 P.2d at 8. We applied that rule to a dismissal for failure to state a claim and considered the plaintiff's arguments regarding the facts she alleged would support her claim. *Id.*

7. Following the rule enunciated in *Phifer,* this Court held in *Perea* that the plaintiff's argument that the general clause in a release was ambiguous could be raised for the first time on appeal. *Perea,* 117 N.M. at 780, 877 P.2d at 586. That rule was again applied by our Court in *Ramer,* which in-

volved a motion to dismiss for failure to state a claim in which the plaintiff's claims for invasion of privacy and sexual harassment were considered on appeal despite the plaintiff's failure to argue those theories in the original complaint or in response to the defendant's motion to dismiss. *Ramer*, 118 N.M. at 365, 881 P.2d at 725.

8. Thus, even though we are compelled to consider Employer's argument in light of these cases, we reject Employer's interpretation of Section 52–1–41(B).

## II. Section 52–1–41(B)

9. At the hearing on the motion for summary judgment, Employer's sole argument was that Section 52–1–41(B) imposes a maximum cap of one hundred weeks on temporary total disability benefits for a secondary mental impairment. As previously noted, on appeal Employer not only makes this argument but also raises the alternative argument that even if Section 52–1–41(B) does not impose an absolute one-hundred-week cap, Worker must still prove that the physical disability continued in order for Worker to recover temporary total disability benefits for a secondary mental impairment beyond one hundred weeks. Consequently, Employer asserts that this Court must remand to the judge for a determination of whether Worker's inability to return to work is due to her physical condition. We reject both of Employer's arguments.

10. We begin with the statutory definition of impairment.

A. "impairment" means an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's guide to the evaluation of permanent impairment or comparable publications of the American medical association. Impairment includes physical impairment, primary mental impairment and secondary mental impairment;

B. "primary mental impairment" means a mental illness arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances, but is not an event in connection with disciplinary, corrective or job evaluation action or cessation of the worker's employment; and

C. "secondary mental impairment" means a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment.

NMSA 1978, Section 52–1–24 (Repl. Pamp.1991) (effective Jan. 1, 1991).

11. Section 52–1–41(B) states: "For total disability resulting from primary mental impairment, the maximum period of compensation is one hundred weeks. For total disability resulting in secondary mental impairment, the maximum period of compensation is the maximum period allowable for the disability produced by the physical impairment or one hundred weeks, whichever is greater." There is an obvious scrivener's error in the second sentence—"resulting *in* secondary mental impairment" should be "resulting *from* secondary mental impairment."

12. We interpret Section 52–1–41(B) as authorizing benefits for a secondary mental impairment beyond one hundred weeks under some circumstances. The statute clearly provides that a worker can receive temporary disability benefits for secondary mental impairment as long as the worker is entitled to receive compensation benefits for the disability produced by the physical impairment that resulted in the secondary mental impairment. We reject Employer's contention that the statute sets an absolute one-hundred-week limit for temporary total disability benefits resulting from secondary mental impairment.

13. As for Employer's alternative argument, it is based on a misconception of the statutory meaning of disability. Employer assumes that Worker cannot have a disability from a physical impairment unless the impairment causes some inability to perform the work for which the worker is fitted.

That assumption is incorrect. The 1990 Act, NMSA 1978, § 52–1–26(B) (Repl.Pamp.1991) (effective Jan. 1, 1991), defines "partial disability" as "a condition whereby a worker, by reason of injury arising out of and in the course of employment, suffers a permanent impairment." The parties in this case stipulated that Worker was assessed a 10% permanent physical impairment, which translated to a 22% disability after factoring in the modifications as provided in Sections 52–1–26.1 to –26.4. Thus, by definition, Worker has a partial disability, regardless of any proof that Worker is in any way unable to perform her work. What Section 52–1–41(B) then provides is that the worker can be compensated for any continuing total disability resulting from secondary mental impairment as long as the worker continues to be entitled to compensation for the disability arising from the physical impairment.

■ 14. Under NMSA 1978, Section 52–1–42(A)(2) (Repl.Pamp.1991) (effective Jan. 1, 1991), the maximum period of compensation allowable for Worker's partial disability is five hundred weeks in cases, such as this one, where the Worker's percentage of disability is less than eighty. Applying Section 52–1–41(B), because the maximum period allowable for the partial disability produced by the physical impairment is five hundred weeks, which is greater than one hundred weeks, Worker is entitled to temporary total disability benefits for her secondary mental impairment for a period of up to five hundred weeks. That period may be reduced, however, if there is a change in Worker's condition, such as improvement in her psychological condition or the cure of her physical impairment.

15. Finally, *Fitzgerald v. Open Hands*, 115 N.M. 210, 848 P.2d 1137 (Ct.App.1993) and *Crespin v. Consolidated Constructors, Inc.*, 116 N.M. 334, 862 P.2d 442 (Ct.App.), *cert. denied*, 116 N.M. 364, 862 P.2d 1223 (1993), are distinguishable because both were decided under a version of the Act prior to the changes which came into effect January 1, 1991. One significant change was in the definition of partial disability. In the former version of the Act, partial disability was de-fined in terms of ability to work. *See* NMSA 1978, § 52–1–26(B) (Repl.Pamp.1987). Under the present Act, partial disability is defined as a condition whereby a worker suffers a permanent impairment. *See* § 52–1–26(B). Given this change in the statutory language, we find nothing in *Fitzgerald* or *Crespin* inconsistent with our decision on this appeal.

*CONCLUSION*

16. For the foregoing reasons, we affirm the judge's order denying Employer's motion for summary judgment and order granting Worker's cross-motion for summary judgment. Worker is awarded $3,000 as attorney's fees on appeal.

17. **IT IS SO ORDERED.**

DONNELLY, J., concurs.

HARRIS L. HARTZ, Judge, Specially concurs.

HARRIS L. HARTZ, Judge (specially concurring).

18. I concur in the result and join in all of Judge Flores's opinion for the Court except the discussion of preservation. I continue to believe that our Court is making a serious mistake by treating district court hearings on motions to dismiss and motions for summary judgment as mere rehearsals for later appellate review. In my view, absent special circumstances, *see* SCRA 1986, 12–216 (Cum. Supp.1995), we should not reverse a summary judgment or judgment on the pleadings based on legal theories not presented to the district court or on evidence (even evidence in the record) that the losing party did not call to the district court's attention. I maintain some hope that our Supreme Court will steer us in a different direction, although this appeal is probably not the best vehicle for addressing the issue.